COMMONWEALTH *vs.* EDMUND J. GODIN.

Plymouth. January 3, 1977. — December 29, 1977.

Present: HENNESSEY, C.J., QUIRICO, KAPLAN, WILKINS, & LIACOS, JJ.

*Homicide. Wanton or Reckless Conduct. Pleading, Criminal,* Indictment. *Practice, Criminal,* Directed verdict, Charge to jury. *Evidence,* Qualification of expert witness, Judicial discretion.

Indictments alleging that the defendant, as president of a corporation, owed a duty of reasonable care to its employees in the maintenance of its premises and that "in reckless disregard of such duty" and "in reckless disregard of the harmful consequences . . . of his failure to perform said duty," he did "willfully, wantonly and recklessly neglect and fail to fulfil" his duty to each of three decedent employees and as a result "did assault and beat said [decedent] and by such assault and beating did kill said [decedent]" were legally sufficient to set forth the crimes of manslaughter [125-127]; there was no merit to the defendant's claim that the indictments did not contain the specificity required by art. 12 of the Massachusetts Declaration of Rights and the Fourteenth Amendment to the United States Constitution [128].

At the trial of a defendant, who was president of a corporation engaged in manufacturing fireworks, charging him with manslaughter in connection with the deaths of three employees who were mortally injured in an explosion at the plant, evidence from which the jury could conclude

that prior to the explosion the amount of fireworks stored in the building where the employees were killed had reached unprecedented levels, that the defendant had been warned of the dangers posed by such accumulations, that nothing had been done to remedy the situation, and that increments in such storage increased the risk of explosion and resulting harm in a proportion commensurate with the extent of increase in storage warranted the denial of the defendant's motion for directed verdicts of not guilty. [128-130]

At the trial of a defendant charged with manslaughter, the judge's charge to the jury adequately distinguished reckless and wanton conduct from negligence, and, in the context of the entire charge, there was no prejudicial error in the instructions on reckless and wanton conduct. [130-131]

At the trial of a defendant, who was president of a corporation engaged in manufacturing fireworks, charging him with manslaughter in connection with the deaths of three employees who were mortally injured in an explosion at the plant, there was no error in admitting the testimony of an expert who had received some of his training from his father, a former employee of the corporation [131]; nor was there error in the admission of testimony as to the condition of the bodies of the decedents after the explosion [131-132]; nor was it error to admit testimony as to manufacturing procedures used at the corporation at times other than the commencement of the work of each of the decedents or at the time of the explosion [132].

INDICTMENTS found and returned in the Superior Court on September 15, 1972.

The cases were tried before *Brogna, J.*

The Supreme Judicial Court granted a request for direct appellate review.

*Morris M. Goldings (Kenneth H. Tatarian* with him) for the defendant.

*Helen M. Doona,* Assistant District Attorney, for the Commonwealth.

LIACOS, J. On March 30, 1972, an explosion occurred in Bridgewater, Massachusetts, at a manufacturing plant housing Pyro Products, Inc., a corporation engaged in the manufacture of fireworks. As a result of that explosion, three employees of the corporation were mortally wounded. The grand jury handed up three indictments which charged

that the defendant committed manslaughter by causing the deaths of the three employees. After jury verdicts against the defendant he was sentenced to concurrent terms of imprisonment in the Massachusetts Correctional Institution at Concord. A notice of appeal was filed with the Appeals Court and we granted the defendant's application for direct appellate review. We find no error.

The assignments of error which have been argued concern (1) the adequacy of the indictments charging the defendant; (2) the admission of certain evidence; (3) the judge's failure to direct verdicts in the defendant's favor; and (4) the propriety of the judge's instructions to the jury. We state the facts in the light most favorable to the Commonwealth. *Commonwealth* v. *Sandler,* 368 Mass. 729, 740 (1975).

The defendant was president of Pyro Products, Inc. The corporation was duly licensed under both the State and local laws and had all bonds and permits required by law to operate a fireworks manufacturing company. The judge below ruled the corporation did not have to comply with the fire safety regulations issued pursuant to G. L. c. 148, § 13, as amended though St. 1945, c. 710, §§ 5-8, as it had begun operation prior to the effective date of the statute and was, therefore, exempt from complying with its provisions.

The plant itself was a complex of some twenty-one separate buildings. Buildings two and three were the locations of the initial stages of manufacture. Building seven was the building where the insertion of fuses and other matter necessary for the fireworks to lift off was accomplished, as well as where a process known as drying took place. Building eight was for shipping, and buildings nine through eighteen were evidently storage buildings. The process of manufacture began in building two with the rolling of the tubes for the fireworks, and the processing of black powder. The "flash," which gives the fireworks their multi-colored luminescence was manufactured in building five and loaded into the tubes at building two.

Of particular import is the process which took place in building number seven, the building in which all three decedents were working at the time of the explosion. That building was used primarily for drying the completed fireworks. At the time of the accident two other functions took place therein; the finishing off of the fireworks by putting the final required wrapping around the tubes and the insertion of so called lifting charges. Lifting charges were the power source which enabled the fireworks to reach their desired altitude for detonation. A secondary use of building seven at the time of the explosion was to store a great number of uncompleted fireworks. These uncompleted fireworks had accumulated because of a strike which forestalled completion of partially manufactured fireworks. The strike lasted from September, 1971, until the beginning of 1972.

There was evidence from which the jury could conclude that prior to the end of the strike no more than 1,000 to 1,500 fireworks were stored in building seven, but after the end of the strike and up to and including the time of the explosion, approximately 4,000 to 5,000 shells were stored there. There was evidence from which the jury could conclude that the storage of large numbers of unfinished shells in the building severely limited and hampered the ability of those persons involved in the manufacturing process to move about and do their job without undue difficulty. Several employees worked in building seven in proximity to completed and uncompleted shells in boxes in an area described as "congested" by the presence of such boxes. There was evidence to indicate the defendant had been warned by employees on separate occasions about the danger possibly resulting from the excess accumulation.

About 9:35 A.M., on March 30, 1972, an explosion rocked the compound. Of the employees working there at the time several were injured. Three were killed. The jury could have concluded that the explosion originated in building seven and caused other explosions and damage at nearby buildings. The dismembered bodies of the decedents were

found outdoors near building seven. Photographs of the scene after the explosion, which were before the jury as part of the Commonwealth's case, depict a scene of almost total devastation.

As part of the case and over the exception of the defendant as to his qualifications, an expert witness testified for the Commonwealth that there was a hazard involved in storing the amount and weight (16,000 pounds) of fireworks stored in the building at the time of the explosion. The hazard consisted of both the increased likelihood of an accident occurring and the greater extent of probable damage which would occur in the event of an accident. While the expert witness was unable to state an opinion as to the source of ignition, in response to a hypothetical question he did state that friction could cause the shells to ignite. He testified that the amount of damage resulting from an explosion of 16,000 pounds of fireworks would be far more extensive than would the damage resulting from an explosion of a substantially lesser amount; namely, that such an explosion probably would completely level the building in which the fireworks were stored. Also, the expert testified that such an explosion would cause secondary damage to any adjacent buildings, and, should there be combustible materials in those other buildings, those materials would be susceptible to ignition by the blast.

This was the sum of the evidence viewed most favorably to the Commonwealth. We consider the defendant's claims of error.

1. *Sufficiency of the Indictments.*

The defendant challenges the sufficiency of the indictments on two grounds. First, he argues that their material allegations fail to set forth a crime under the law of Massachusetts as it was on the day of the explosion. Second, he argues that the indictments do not "plainly and fully, substantially and formally" describe the crime as required by both art. 12 of the Declaration of Rights of the Massachusetts Constitution and the Fourteenth Amendment to the Constitution of the United States.

(a) The indictments alleged to contain these fatal flaws state in each instance in material part that Pyro Products, Inc., "was under a legal duty to its employees to use reasonable care to keep its premises safe for their use in their employment"; that the defendant "was . . . authorized by the corporation to maintain, control, operate, construct, alter, supervise and manage its premises"; that he "accepted the responsibility for such acts," and "was therefore under a duty to its employees to use such reasonable care," but "in reckless disregard of such duty" to each decedent employee and in "reckless disregard of the probable harmful consequences" to such employee "of his failure to perform said duty," he "did wilfully, wantonly and recklessly neglect and fail to fulfil" his duty to each of the three decedents and as a result "did assault and beat said [decedent] and by such assault and beating did kill said [decedent]."

The defendant's primary argument in respect to the alleged insufficiency of the indictments is that no decision of this court up to the time of the explosion set forth, in respect to criminal law, the rule that an employer owed his employees a duty of reasonable care in the operation and maintenance of the place of employment. Consequently, it is claimed the indictments do not set forth the crime of manslaughter.

Both parties to this appeal recognize the landmark case respecting the determination of this and other related issues to be *Commonwealth* v. *Welansky*, 316 Mass. 383 (1944). That case involved the tragic fire at the Cocoanut Grove nightclub in Boston in 1942. The defendant, the president and dominant figure of the corporation which owned the club, was indicted for the crime of manslaughter, based on material allegations closely resembling those in the case at bar. The defendant concedes this similarity but points to one difference that he alleges is crucial. Whereas the indictments in this case alleged that the defendant owed a duty of reasonable care to an employee, the indicments in *Welansky* alleged the existence of that duty in respect to invitees. Moreover, the defendant points to a footnote in *Welansky*

at 397 set forth in the margin,[1] which suggests no such duty is owed to employees. The defendant argues that the standard set forth in the *Welansky* footnote states the law applicable in 1972. He claims that since the standard differs from that set forth in the indictments, the difference is fatal to their legal sufficiency.

There is no statutory definition of manslaughter. The elements of the crime are derived from the common law. *Commonwealth* v. *Webster*, 5 Cush. 295, 303 (1850). The common law development in the area has resulted in the definition of two distinct forms of manslaughter. So called voluntary manslaughter, see *Commonwealth* v. *Soaris*, 275 Mass. 291, 299 (1931), is a form of manslaughter clearly not implicated in the instant case and it need not be discussed. Involuntary manslaughter is "an unlawful homicide unintentionally caused by an act which constitutes such a disregard of probable harmful consequences to another as to amount to wanton or reckless conduct." *Commonwealth* v. *Vanderpool*, 367 Mass. 743, 747 (1975). See *Commonwealth* v. *Campbell*, 352 Mass. 387, 397 (1967). The Commonwealth has an interest that persons within its territory should not be killed by the wanton and reckless conduct of others. *Commonwealth* v. *Atencio*, 345 Mass. 627, 629 (1963). The interests sought to be protected are readily distinguishable from the interests protected by the imposition of legal duties and the standards for determining their breach which have shaped the law of civil liability.[2] The fact that a particular

---

[1] "Compare the case of an employer who at common law owes no duty to his employees to make his factory safer than it appeared to be when the employment began, because they contractually assumed the risk. *Jones* v. *Granite Mills*, 126 Mass. 84 [1878]. *Keith* v. *Granite Mills*, 126 Mass. 90 [1878]. *Pauley* v. *Steam Gauge & Lantern Co.* 131 N. Y. 90 [1892]. *Huda* v. *American Glucose Co.* 154 N. Y. 474 [1897]. In those cases recovery by a servant against his master for injury caused by fire in a factory was denied. See also *Wainwright* v. *Jackson*, 291 Mass. 100 [1935]; *Little* v. *Lynn & Marblehead Real Estate Co.* 301 Mass. 156 [1938]. In *Cloutier* v. *Oakland Park Amusement Co.* 129 Maine, 454 [1930], the court failed to distinguish between such cases and the case of an invited business visitor."

[2] The development of tort law in this Commonwealth is exemplified by a number of recent decisions. See *Mounsey* v. *Ellard*, 363 Mass. 693

allegation of facts may be nonactionable in tort does not perforce mean the same holds true when those same facts are contained in the material allegations of an indictment for manslaughter.

It is on this point that the defendant's argument has its downfall. The dictum in *Welansky* which the defendant seeks to give the force of law was based on notions of contract and assumption of the risk aimed at determining who shall bear the risk of loss in a particular circumstance. W. Prosser, Torts § 68 (4th ed. 1971). Doctrines such as contractual assumption of risk have no place in the criminal law. See *Commonwealth* v. *Atencio, supra.* It follows, therefore, that the language in *Welansky* relied on by the defendant must be viewed as obiter dictum with no force of precedent.

An employer whose acts or omissions constitute a disregard for the probable harmful consequences and loss of life as to amount to wanton or reckless conduct is properly charged with manslaughter where a foreseeable death is caused thereby. The *Welansky* case settled any claim that "negligence" and "wanton" and "reckless" conduct were words expressing differences of degree of risk. The differences involved are differences in kind. The interests involved are distinct. The State is the offended party where a death is caused by recklessness. To accept the defendant's arguments here is not only to overlook the fundamentally different purposes of criminal law and tort law but to create a class of persons — employees — as to whom a license to kill by wanton and reckless conduct is given. No such right has ever existed, nor do we accept such a view now. The indictments were legally sufficient.

---

(1973) (rejecting different standards of care as between licensees and invitees); *Lindsey* v. *Massios,* 372 Mass. 79 (1977) (tenant's visitors in common passageways); *King* v. *G & M Realty Corp.,* 373 Mass. 658 (1977) (tenants in common passageways). See also *Bouchard* v. *DeGagne,* 368 Mass. 45 (1975) (*Mounsey* doctrine to be applied retroactively). Under the view we take (as did the trial judge) these decisions are not relevant to the issues involved here because of the different interests involved in the criminal law.

(b) Much of what we have said in regard to the legal suffi-ciency of the indictments is relevant to the defendant's claim that the indictments did not contain the specificity re-quired by art. 12 of the Massachusetts Declaration of Rights and the Fourteenth Amendment to the United States Con-stitution.

The defendant concedes that the indictments in this case track, with the exception previously noted, the indictments in *Welansky*. A claim of lack of specificity similar to this one was also made in that case and was rejected. The reasons set forth for the rejection of the defendant's claim in *Welansky*, i.e., that the indictment stated the elements required by the statutes relative to such indictment, G. L. c. 277, § 79, and were fully supported by particulars, G. L. c. 277, § 40, as well as the absence of any claim of prejudice, are equally applicable here. *Commonwealth* v. *Welansky, supra* at 393-396. Cf. *Commonwealth* v. *Baker*, 368 Mass. 58 (1975). It therefore follows that the defendant's claim is without merit.

2. *Failure to Grant Directed Verdicts.*

The defendant moved for directed verdicts of not guilty at the close of the Commonwealth's case and again at the close of all the evidence. His motions were denied. The de-fendant argues that the trial judge was in error in failing to grant his motions on three grounds: (1) that there was no evidence that he caused to be stored an excessive quantity of fireworks; (2) that, as matter of law, he did not engage in wanton and reckless conduct; and (3) that there was no evi-dence, assuming adequate proof of excessive storage, that the excessive storage was the cause of the deaths.[3]

---

[3] The defendant also asserts that the judge applied an erroneous stand-ard of review. However, if there was, as we conclude, sufficient evidence to go to the jury, then any such alleged error was harmless. We consider on this issue only the evidence introduced up to the time the Common-wealth rested its case and the defendant filed his motions for directed ver-dicts. *Commonwealth* v. *Kelley*, 370 Mass. 147, 150 (1976). The view we take of the evidence is that most favorable to the Commonwealth. *Com-monwealth* v. *Klein*, 372 Mass. 823 (1977).

The first two grounds asserted rely in large part on the absence of any evidence that the quantity of fireworks stored violated any applicable statute, rule, regulation or custom and usage. To a large extent the defendant's argument misapprehends the nature of the standard which would establish the criminal liability of the defendant.

"The essence of wanton or reckless conduct is intentional conduct, by way either of commission or of omission where there is a duty to act, which conduct involves a high degree of likelihood that substantial harm will result to another. . . . [Citations omitted.] Wanton or reckless conduct amounts to what has been variously described as indifference to or disregard of probable consequences." *Commonwealth* v. *Welansky, supra* at 399. See also *Banks* v. *Braman,* 188 Mass. 367 (1905).

The Commonwealth's theory of the case, as set forth in its bill of particulars and at trial was that the "storage of fireworks in excessive and illegal amounts" constituted the defendant's "wanton and reckless conduct." The essence of the particular, fairly read, is that by allowing the level of fireworks to accumulate to the extent it did, the defendant created a risk of potential harm of such a degree and magnitude as to constitute wanton and reckless conduct.

That there was no evidence that the accumulation in the amounts alleged violated a particular statute, rule or regulation is of no more consequence than it was in *Welansky.* At best the violation of such standards would be evidence of negligence, *Richmond* v. *Warren Inst. for Sav.,* 307 Mass. 483 (1940), a standard different in kind from wanton and reckless conduct. *Commonwealth* v. *Edelin,* 371 Mass. 497 (1976). The standard necessary for a conviction is at once both a subjective and objective standard, and is based in part on the knowledge of facts which would cause a reasonable man to know that a danger of serious harm exists. Such knowledge has its roots in experience, logic, and common sense, as well as in formal legal standards.

In this case there was evidence from which the jury could conclude that (1) prior to the explosion the amount of fire-

works stored in building seven had reached unprecedented levels; (2) the defendant had been warned of the dangers posed by such accumulations; (3) nothing was done to remedy the situation; and (4) increments in such storage increased the risk of explosion and resulting harm in a proportion commensurate with the extent of increase in storage.

Such evidence, if believed, would warrant the jury in concluding that the defendant should have been aware and indeed was aware of the increased risk of harm and thus his failure to remedy the situation was the kind of conduct which constitutes wanton and reckless conduct. It certainly could not be said that such conduct was not reckless as matter of law. Recklessness involves conscious creation of a substantial and unjustifiable risk. See Model Penal Code § 2.02 (c) (Proposed Official Draft 1962); Comments, § 2.02 at 123-125 (Tent. Draft No. 4, 1955). As long as there is proof that the defendant's conduct was reckless as far as the risk of explosion was concerned, he must then be held accountable for the probable consequences of such conduct.

It therefore follows that the motions for the directed verdicts were properly denied.

3. *The Charge.*

The defendant assigned as error both the judge's giving of certain instructions and his failure to grant certain of the defendant's requests for instructions. The substantive basis on which the assignments are premised is twofold: (1) that the charge did not adequately define wanton and reckless conduct and (2) that it did not reflect the state of the common law as of the time of the crime. The second line of argument has been previously discussed and we need not repeat our discussion here.

The charge to the jury is to be viewed in light of the overall impact it has on the jury. *Commonwealth* v. *Pinnick,* 354 Mass. 13, 15 (1968). A judge need not instruct the jury in exact accord with the defendant's request. *Commonwealth* v. *Lussier,* 333 Mass. 83, 93 (1955). The defendant is only entitled to have the issues of fact clearly presented and

the law applicable thereto properly explained. *Commonwealth* v. *Kelley*, 359 Mass. 77, 93 (1971).

The specific objections viewed in light of this standard can be easily set forth: (a) The defendant claims that the instructions were inadequate in failing to distinguish reckless and wanton conduct from negligence and gross negligence. *Welansky* requires that such a distinction be made. See *Banks* v. *Braman, supra.* However, our reading of the charge shows that the judge was careful to emphasize that the conduct for which liability might be imposed in this case must be wilful conduct, as distinguished from negligence. There was no error.

(b) The defendant also argues that the charge of reckless and wanton conduct did not set forth an adequate standard by which the jury could judge the defendant's conduct. Much of the language complained of is taken directly from instructions which were approved by this court in *Welansky*. The defendant has, however, pointed to portions of the charge which viewed in isolation arguably may be read to set a lesser standard. Viewed in the context of the entire charge wherein the judge emphasized the fact that the defendant had to be charged with knowingly accepting a high degree of risk of substantial harm we do not believe that such language was prejudicial to the defendant. *Commonwealth* v. *Kelley, supra.*

4. *Evidentiary Points.*

The defendant has argued that the judge committed reversible error by three rulings on the admission of evidence. We consider his arguments briefly.

(a) The defendant argues that the testimony of the Commonwealth's expert should have been excluded as he received some of his training from his father, who had worked Pyro Products, Inc. The expert, himself, had never worked for the corporation. Such matters go to the credibility of the witness and are for the jury and not the judge to determine. *Muzi* v. *Commonwealth*, 335 Mass. 101 (1956).

(b) The defendant challenges the admission of testimony as to the condition of the bodies of the decedents soon after

the explosion. Our reading of the transcript does not allow us to say that the judge abused his discretion in admitting such evidence. Compare *Commmonwealth* v. *Lamoureux,* 348 Mass. 390, 393 (1965), with *Commonwealth* v. *Richmond,* 371 Mass. 563 (1976).

(c) The defendant also argues that it was error to admit testimony as to manufacturing procedures used at Pyro Products, Inc., at times other than the commencement of the work of each of the decedents or at the time of the explosion. So much of the objection as hinges on the defendant's understanding of the applicable law is, of course, without merit. The evidence was relevant so that the jury could judge the extent of the risk accepted by the defendant in allowing the extent of accumulation which took place.

The witness was also subject to vigorous cross-examination thereby affording the defendant the opportunity to alleviate any possible prejudice. There was no error.

5. From what we have said it follows that justice does not require the granting of a new trial.

*Judgments affirmed.*