COMMONWEALTH *vs.* ANTHONY C. MASCOLO
(and a companion case[1]).

Suffolk.    January 9, 1978. — April 25, 1978.

Present: HALE, C.J., KEVILLE, & BROWN, JJ.

*Search and Seizure. Obscenity*, Community standard. *Constitutional Law*, Obscenity. *Practice, Criminal*, Examination of jurors, Instructions to jury, View, New trial, Appeal to Superior Court. *Evidence*, Relevancy and materiality.

There is no requirement that a magistrate view an allegedly obscene film prior to the issuance of a warrant for its seizure. [269–270]
A search warrant authorizing seizure of a named film and "all records relating to the production, manufacture, distribution or purchase of said film" did not constitute an impermissible general warrant. [270–271]

---

[1] Commonwealth *vs.* United American Theatre Corporation (doing business as Pussycat Cinema).

At the trial of indictments charging possession of an obscene motion picture film with intent to disseminate, there was no error in the denial of the defendants' motion that the jury be drawn from a Statewide venire. [271]

At the trial of indictments charging possession of an obscene motion picture film with intent to distribute, there was no abuse of discretion in denying the defendants' motion to permit defense counsel to question prospective jurors directly where the judge had adequately questioned prospective jurors concerning possible bias. [272]

At the trial of indictments charging possession of an obscene motion picture film with intent to distribute, there was no merit to the defendants' contention that G. L. c. 272, §§ 29 and 31, are unconstitutionally overbroad or vague. [272]

The right to privacy applicable to certain sex related conduct between consenting adults does not protect commercial display of pornographic films in public theatres. [272–273]

Viewed as a whole, the judge's charge to the jury in a criminal case was not coercive although it contained certain elements of the charge from *Commonwealth* v. *Tuey*, 8 Cush. 1 (1851), and referred to the fact that it was Friday afternoon. [273–276]

At a criminal trial, the judge's mention of the possibility of an appeal in instructing the jury was not likely to have the effect of reducing the jurors' appreciation of the significance of their verdict. [276–277]

At the trial of indictments charging possession of an obscene motion picture film with intent to distribute, there was no error in the judge's instructions on the knowledge required for conviction under G. L. c. 272, § 29, or on the subject of obscenity. [277]

At the trial of indictments charging possession of an obscene motion picture film with intent to disseminate, the judge did not abuse his discretion in admitting in evidence certain business records of the corporate defendant to show the individual defendant's control of the corporation's activities and of the premises where the film was exhibited. [278–279]

At the trial of indictments charging possession of an obscene motion picture film with intent to distribute, the judge did not abuse his discretion in excluding evidence offered by the defendants with respect to the number of patrons of the theatre, the cash deposits of the corporate defendant, and zoning regulations which located the theatre in or near the adult entertainment district or in denying the defendants' motion for a view of the district. [279]

This court declined to adopt a per se rule requiring dismissal of a criminal complaint whenever a police official makes a potentially prejudicial statement to the press during a trial. [279–280]

In the circumstances there was no error in the denial of a motion for a new trial of a criminal case on the ground that a juror might have known either the prosecutor or defense counsel and in refusing to hold an evidentiary hearing on the motion. [280–281]

Defendants who appealed to the Superior Court for a trial de novo following conviction in a Municipal Court on charges of possession of an obscene motion picture film with intent to distribute were not deprived of any constitutional rights when they received more severe sentences after trial in the Superior Court. [281–282]

COMPLAINTS received and sworn to in the Municipal Court of the City of Boston on April 1, 1976.

Upon appeal to the Superior Court the cases were tried before *Bennett, J.*

*Morris M. Goldings (Kenneth H. Tatarian* with him) for the defendants.

*Timothy P. O'Neill,* Assistant District Attorney, for the Commonwealth.

KEVILLE, J. This is an appeal by Anthony C. Mascolo (Mascolo) and the United American Theatre Corporation (corporation), from convictions under G. L. c. 272, § 29, for possession of an obscene motion picture film with intent to disseminate. The defendants were found guilty in the Municipal Court of the City of Boston. Mascolo was fined $2,500 and the corporation $2,500. The defendants appealed to the Superior Court for a trial de novo where they were found guilty by a jury. Mascolo was sentenced to one year in a house of correction and the corporation was fined $5,000. The defendants have appealed under G. L. c. 278, §§ 33A–33G. The jury could have found the following:

On March 29, 1976, two police detectives viewed the allegedly obscene film at the Pussycat Cinema. They paid the required admission fee at the box office to the defendant Mascolo. One of the detectives took notes throughout the movie. During the movie one of the detectives noticed Mascolo walk down an aisle to the front of the theatre to adjust a thermostat. Following their viewing of the entire film, which lasted for approximately eighty minutes,

they prepared an affidavit in support of a request for a warrant. The affidavit included a statement which depicted each scene of the film in detail.

The warrant was issued; and on March 30 the detectives returned to the theatre where the same film was being exhibited. While in the presence of his attorney, Mascolo stated, "I am the entire business. I am the sole corporater [*sic*]. It is a one man business." The detectives seized the film and certain business records. Mascolo signed a receipt for the items seized as "manager and owner." The detectives obtained additional business records from public files and through a subpoena duces tecum. The sole witness at trial was the detective who had taken notes during the movie and had executed the affidavit in support of the warrant. The film was exhibited to the jurors. Further facts will be stated as necessary in the discussion of the issues.

Contrary to the defendants' assertion, there was no error in the denial of motions to suppress certain evidence seized pursuant to the warrant which issued without the issuing magistrate's having viewed the film. In support of their contention the defendants assert that the warrant issued without an independent determination by the issuing official, without probable cause, and that the scope of the warrant was so sweeping as to constitute a "general warrant." It has been concluded in several decisions that there is no requirement that a magistrate view an allegedly obscene film prior to the issuance of a warrant for its seizure. *United States* v. *Sherpix, Inc.*, 512 F.2d 1361, 1368–1369 (D.C. Cir. 1975). *United States* v. *Marks*, 520 F.2d 913, 917 (6th Cir. 1975), rev'd on other grounds, 430 U.S. 188 (1977). *United States* v. *Christian*, 549 F.2d 1369, 1371 (10th Cir.), cert. denied, 432 U.S. 910 (1977).[2]

[2] The defendants rely upon *Lee Art Theatre, Inc.* v. *Virginia*, 392 U.S. 636 (1968). However, the Court in *Lee Art Theatre, Inc.*, declined to rule on the question whether a magistrate must view a film before issuing a warrant. *Id.* at 637.

In each of the cases just cited the issuing magistrate had not viewed the film but based his decision upon affidavits which had depicted its content in detail. The descriptions in those cases and in the instant case as well were sufficiently detailed to allow the issuing official to focus searchingly on the question of obscenity. *Ibid.* Compare *Marcus* v. *Search Warrant of Property at 104 E. 10th St.*, 367 U.S. 717, 731–732 (1961). Moreover, the affidavit in the instant case established a sufficient basis for the issuing judge to make a determination of probable cause for the issuance of the warrant. *Commonwealth* v. *State Amusement Corp.*, 356 Mass. 715 (1969). *United States* v. *Christian*, 549 F.2d at 1371. Such an affidavit is to be viewed in a "common sense and realistic fashion." *Commonwealth* v. *Cuddy*, 353 Mass. 305, 308 (1967).

Nor do we find merit in the defendants' assertion that the warrant was drawn in such vague terms that it constituted an impermissible "general warrant."[3] Contrast *Stanford* v. *Texas*, 379 U.S. 476, 480–485 (1965) (conviction set aside upon evidence seized under a warrant inadequately describing the things to be seized in violation of the Fourth Amendment). We think that the validity of the warrant in the instant case is supported by the holding in *Andresen* v. *Maryland*, 427 U.S. 463, 480–481 n.10 (1976). In *Andresen*, the Court held that otherwise general language in a warrant was adequately specific where it related to evidence of a specific crime. That Court also noted, inter alia, that in search of evidence, some irrelevant documents must be examined. *Ibid.* In the instant case the warrant was limited to evidence relating to the dissemination of the specific film. More-

---

[3] The exact language of the warrant was "[a] film titled 'Anybody But My Husband' and all records relating to the production, manufacture, distribution or purchase of said film, including all books, records, general ledgers, cash disbursement books, cash receipt books, cancelled checks, bank statements, and deposit slips, payroll records, tax returns, correspondence files, account receivable ledgers, bills of lading and all records which would show ownership of person or persons or managerial personnel."

over, documents showing purchase, ownership or other connection with the film were probative of knowledge on the part of Mascolo and the corporation required for a conviction under § 29. *Commonwealth* v. *Thureson*, 371 Mass. 387, 389–390 (1976). We note that the defendants identified no document seized by the detectives in executing the warrant which did not relate to the crime charged. The understanding of a warrant by executing officers, as reflected in the types and numbers of items actually seized, is one indication whether the warrant adequately specified the goods to be seized. See *Stanford*, 379 U.S. at 485; *Andresen*, 427 U.S. at 493 (Brennan, J., dissenting); *Commonwealth* v. *Jacobs*, 346 Mass. 300, 309 (1963). In the instant case the executing officers apparently understood the limitations imposed by the warrant.[4]

The defendants challenge the jury selection procedure on two grounds. They claim that there was error in the denial of their motion for a Statewide venire and that the judge's examination of prospective jurors was inadequate. They argue that only a jury drawn from a Statewide venire can discern and apply contemporary standards of the Commonwealth as required by G. L. c. 272, §§ 29 and 31. They assert that a jury drawn from a single county does not satisfy this requirement. However, there is no showing on the record before us that a jury drawn from a Statewide venire would be more likely to perceive and to apply the contemporary standards of the Commonwealth as measured by the views of an average citizen than would a jury drawn from a single county.[5]

---

[4] Unlike the cases in this Commonwealth relied upon by the defendants, the warrant in the present case did more than track the broad language of the underlying statute. See *Commonwealth* v. *Jacobs*, 346 Mass. 300, 303 (1963); *Commonwealth* v. *Dorius*, 346 Mass. 323, 324–325 (1963); Smith, Criminal Practice and Procedure § 178, at 106 (1970).

[5] We note that the Supreme Judicial Court has upheld nonjury convictions under § 29, emphasizing that "the trier of fact may draw

As to the defendants' second objection, the record shows that the judge carefully and adequately questioned prospective jurors concerning their possible bias or prejudice and that there was no abuse of discretion in denying the defendants' motion to permit defense counsel to question prospective jurors directly. *Commonwealth* v. *Walker*, 370 Mass. 548, 573 (1976), and cases cited. A judge has broad discretion in determining the extent of the inquiry to be made of prospective jurors. *Commonwealth* v. *Pinckney*, 365 Mass. 70, 73 (1974). *Commonwealth* v. *Harrison*, 368 Mass. 366, 371 (1975). Here the judge carefully explained the subject matter to the jurors individually and inquired of each of them whether they could arrive at a fair, impartial decision. See *Commonwealth* v. *Fleurant*, *post* 846 (1978). Additionally, he inquired of the jurors whether they were acquainted with the attorneys for either party. See G. L. c. 234, § 28.

The defendants challenge the validity and applicability of G. L. c. 272, § 29, claiming that § 29 does not proscribe the conduct charged against them. There is no merit in the defendants' contention that §§ 29 and 31 are unconstitutionally overbroad or vague. *Commonwealth* v. *707 Main Corp.*, 371 Mass. 374, 382–383 (1976). *Commonwealth* v. *Trainor*, 374 Mass. 796, 798–799 (1978). Relying upon *Commonwealth* v. *Balthazar*, 366 Mass. 298 (1974), they assert that § 29 is inapplicable to private consensual conduct of adults. This argument is unpersuasive. The court in *Balthazar* held that G. L. c. 272, § 35, punishing unnatural and lascivious acts, was not applicable to private consensual conduct between adults. *Id.* at 302. That determination was based upon the emergent articulation of the constitutional right of an individual to be free from

on his own knowledge of normative views in his own community in applying statutorily prescribed community standards." *District Attorney for the No. Dist.* v. *Three Way Theatres Corp.*, 371 Mass. 391, 394 (1976).

government regulation of certain sex related activities and upon the court's own awareness of changes in community values with respect to permissible sexual conduct. *Ibid.* Those considerations are inapplicable to the facts presented on this appeal. The Supreme Court has determined that commercial display of pornographic films in public theatres is not protected by a constitutional right to privacy. *Paris Adult Theatre I* v. *Slaton,* 413 U.S. 49, 57–58, 65–66 (1973). But see *Commonwealth* v. *Trainor,* 374 Mass. at 804 n.6 (Abrams, J., dissenting). Moreover, a violation of § 29 does not depend upon an appellate court's awareness of changing community standards of permissible sexual conduct. The Legislature has placed the responsibility for determining and applying "contemporary standards of the Commonwealth" (G. L. c. 272, § 31, as appearing in St. 1974, c. 430, § 12) in the hands of the jury. The court's role is limited to a determination whether, as matter of law, there was sufficient evidence upon which the jury could find a violation of § 29.

The defendants characterize the judge's instruction to the jury as a coercive, "premature and partial *Tuey-Rodriquez* charge." See *Commonwealth* v. *Tuey,* 8 Cush. 1 (1851); *Commonwealth* v. *Rodriquez,* 364 Mass. 87, 97–102 (1973). The charge approved in *Tuey* was given to a deadlocked jury to encourage further deliberation and a final verdict. Although subsequently employed in the Federal courts (*Allen* v. *United States,* 164 U.S. 492, 501 [1896];[6] *Fulwood* v. *United States,* 369 F.2d 960, 961–962 [D.C. Cir.], cert. denied, 387 U.S. 934 [1966]), and in the courts of this Commonwealth (*Commonwealth* v. *Richardson,* 361 Mass. 661, 663–664, cert. denied, 409 U.S. 884 [1972]), the charge has been criticised for its tendency to coerce

[6] In *Allen* the Court upheld the trial court which had delivered a charge "taken literally" from *Tuey.* Thus, in the Federal courts the Tuey charge is referred to as the Allen charge. *United States* v. *Bailey,* 468 F.2d 652, 661 (5th Cir. 1972).

jurors into returning verdicts. See *United States* v. *Thomas*, 449 F.2d 1177, 1182–1184 (D.C. Cir. 1971); *United States* v. *Bailey*, 468 F.2d 652, 665–669 (5th Cir. 1972); Note, Due Process, Judicial Economy and the Hung Jury: A Reexamination of the Allen Charge, 53 Va. L. Rev. 123, 126 (1967). These criticisms prompted the Supreme Judicial Court to reconsider and to modify the Tuey charge in *Rodriquez*, 364 Mass. at 98–100.

We perceive no indication of any such coercive potential in the judge's charge in the instant case. The several coercive elements in the Tuey charge are absent from the charge before us. An oft criticised element of the Tuey charge is an instruction that jurors in the minority should reconsider their position without an equivalent instruction to the majority. *Rodriquez*, 364 Mass. at 99. *United States* v. *Fioravanti*, 412 F.2d 407, 416 (3d Cir.), cert. denied sub nom. *Panaccione* v. *United States*, 396 U.S. 837 (1969). *United States* v. *Flannery*, 451 F.2d 880, 883 (1st Cir. 1971). Note, Due Process, Judicial Economy and the Hung Jury: A Reexamination of the Allen Charge, 53 Va. L. Rev. at 130.[7] In the instant case the judge made no reference to jurors who might hold a minority view. Also absent from the charge was an instruction, often regarded as coercive in a Tuey-type charge, on the undesirability of a mistrial. See *Rodriquez*, 364 Mass. at 100 n.16; *Highland Foundry Co.* v. *New York N.H. & H.R.R.*, 199 Mass. 403, 406–409 (1908); *Commonwealth* v. *Brown*, 367 Mass. 24, 29–32 (1975).

However, the judge did instruct the jury that reaching a verdict one way or the other was "important"; and he predicted in substance that if the jurors entered upon their deliberations in an attitude of mutual consideration they would reach a verdict in "a short time." But we think that his remarks fell short of the frequently criti-

---

[7] In response to this criticism, *Rodriquez*, 364 Mass. at 101, modified the Tuey charge to eliminate an express direction that the minority jurors reconsider their position.

Commonwealth *v.* Mascolo.

cised statement in the Tuey charge that "the case must at some time be decided." *Tuey*, 8 Cush. at 2. *Rodriquez*, 364 Mass. at 98–99. Moreover, the judge expressly acknowledged the possibility of a hung jury when he stated, "[a] criminal jury may not disband from its deliberations until it either reaches a verdict *or is satisfied that it cannot reach a verdict*" (emphasis supplied). Compare *Highland Foundry Co., supra* at 406–407; *United States* v. *Harris*, 391 F.2d 348, 355 (6th Cir.), cert. denied, 393 U.S. 874 (1968).

A further factor distinguishing the charge before us from a traditional Tuey charge is that the alleged coercive aspects of the present charge were included in the original instructions to the jury. In *Tuey* and in most subsequent cases employing the Tuey charge, the instructions were delivered to a deadlocked jury. See *Tuey*, 8 Cush. at 1–2, and *Rodriquez*, 364 Mass. at 98. Inclusion of Tuey-type language in an original charge has not been fully considered in this Commonwealth. See *Commonwealth* v. *French*, 357 Mass. 356, 405 (1970), judgments vacated as to death penalty sub nom. *Limone* v. *Massachusetts*, 408 U.S. 936 (1972). The majority view is that Tuey-type language is far less coercive when included in the original instructions as opposed to supplemental instructions given to a deadlocked jury. *Nick* v. *United States*, 122 F.2d 660, 674 (8th Cir. 1941). *United States* v. *Fioravanti*, 412 F.2d at 419. *United States* v. *Marcey*, 440 F.2d 281, 286 n.27 (D.C. Cir. 1971). Note, The Allen Charge: Recurring Problems and Recent Developments, 47 N.Y.U.L. Rev. 296, 305 (1972). Some authorities have encouraged inclusion of such a charge in the original instructions. See *Burrup* v. *United States*, 371 F.2d 556, 558 (10th Cir.), cert. denied, 386 U.S. 1034 (1967);[8] *United*

---

[8] The Supreme Judicial Court has approved a charge suggested by the American Bar Association which resembles the Tuey charge and is apparently intended for use in the original instruction or in a supplemental charge to a deadlocked jury. *Commonwealth* v. *Rodriquez*, 364 Mass. at 100–103 & app. B.

*States* v. *Wynn,* 415 F.2d 135, 137 (10th Cir. 1969), cert. denied, 397 U.S. 994 (1970). Compare *United States* v. *Thomas,* 449 F.2d at 1182–1184.

The judge informed the jury that if they should have difficulty in reaching a verdict during the afternoon (Friday), "we may have to delay sometime in the evening until the following morning. Accommodations in such a case are provided, arrangements are made to secure the necessary overnight accommodations, wear and articles. So don't be too alarmed about that." Contrary to the defendants' claim that these remarks amounted to a thinly veiled threat to keep the jurors overnight unless they should return a verdict, we think that they were intended to do no more than reassure the jury should their deliberations be extended.[9] See *United States* v. *Strauss,* 443 F.2d 986, 991 (1st Cir.), cert. denied, 404 U.S. 851 (1971). Contrast *Pfeiffer* v. *State,* 35 Ariz. 321, 332 (1929); *Allen* v. *State,* 172 Miss. 472, 490–491 (1935).

Similarly, the judge's passing reference to the fact that it was "past noon on Friday," read in context, was not coercive. It seems to us that he was simply articulating a fact which was unquestionably present in the jurors' minds. The judge's reference to Friday afternoon carried with it no implicit suggestion "that it was more important to be quick than to be thoughtful." Compare *United States* v. *Flannery,* 451 F.2d at 883.

The defendants challenge the judge's reference to the possibility of an appeal. In response to the defendants' request, the judge enlarged upon his instructions defining obscenity. The judge explained to the jury, as a preface to the additional instruction, that "in order to make a clear record in case this matter goes up on appeal, I wouldn't want the appellate judges to think that you were unacquainted with certain of these matters."[10]

---

[9] One juror had in fact expressed reservations about being "locked up."

[10] The judge had instructed the jurors individually in the course of

There is no absolute ban against reference at trial to the appellate process. *Commonwealth* v. *Walker*, 370 Mass. at 574–576. In *Walker* the court upheld the conviction where the trial judge had described the appellate process to the jury in some detail including the fact, not mentioned in the instant charge, that only the defendant had the right of appeal. We think that there was no danger here that the judge's reference to an appeal would have "the inescapable effect of reducing the jurors' appreciation of the significance of their deliberations and verdict" or of implicitly telling them "not to be overly concerned about rendering hasty or 'correct' verdicts." *Id.* at 574.

We conclude that although the judge's references to Friday afternoon and to the possibility of an appeal would have been better left unsaid, his instructions viewed as a whole (*Commonwealth* v. *Pinnick*, 354 Mass. 13, 15 [1968]; Smith, Criminal Practice and Procedure § 1080, at 472 [1970]) were not coercive.

The defendants' several objections to the judge's instructions to the jury in defining the knowledge which must be shown for a conviction under § 29 strike us as being largely superficial. The judge drew accurately both upon the statutory definitions in § 31 and upon the Supreme Judicial Court's interpretation of §§ 29 and 31. *Commonwealth* v. *707 Main Corp.*, 371 Mass. at 382–383. *Commonwealth* v. *Thureson*, 371 Mass. at 389–390. Whether a judge reads or states the substance of a statute to a jury is left to his discretion. *Commonwealth* v. *Greenberg*, 339 Mass. 557, 585 (1959). Smith, *supra* § 1079, at 471.

The defendants' objections to the charge on the subject matter of obscenity were inconsequential; for example, their objection to the judge's statement that prurient interest includes an appeal to "lustful instincts," and their objection that the judge instructed the jury to use an

---

the jury selection procedure, and collectively as part of his original charge, on the definition of obscenity.

average citizen's standard to determine "whether or not what was shown would be patently offensive, both what was shown and the fact that it was shown on a film."

We find no merit in the defendants' objection to the judge's use of an analogy involving driving under the influence of alcohol for the purpose of illustrating that in certain areas of behavior there are community standards; and the fact that individuals on occasion fall below those standards does not indicate that the standards are nonexistent. In our view the variations from the approved definition of obscenity included in the charge were insignificant. See *Miller* v. *California,* 413 U.S. 15 (1973); *Commonwealth* v. *707 Main Corp.,* 371 Mass. 374. Read as a whole, the charge accurately instructed the jury. *Commonwealth* v. *Pinnick,* 354 Mass. at 15. *Commonwealth* v. *Godin,* 374 Mass. 120, 130–131 (1977).

The defendants claim error in the judge's refusal to give numerous requested instructions. We have examined each of the requests and have concluded that those which accurately state the law were given in substance and that there was no error. *Commonwealth* v. *Godin, supra,* and cases cited.

The defendants also claim error in the admission and exclusion of certain evidence and in the denial of their motion for a view of the adult entertainment district. In passing on these questions the judge was obliged to determine whether the probative value of the evidence would outweigh its prejudicial effect or a tendency to confuse the jury (*Commonwealth* v. *Cohan,* 307 Mass. 179, 183 [1940]; Leach & Liacos, Massachusetts Evidence at 295–296 [4th ed. 1967]; Hughes, Evidence § 284, at 340–341 [1961]); and his rulings are to be overturned only upon a showing of an abuse of discretion. *Commonwealth* v. *D'Ambra,* 357 Mass. 260, 263–264 (1970). *Commonwealth* v. *Bys,* 370 Mass. 350, 360–361 (1976).

There was no abuse of discretion in the admission of certain checks, check stubs, lease documents and business records of the corporation. They were probative to

show Mascolo's control of the corporation's activities and of the premises where the film was exhibited and were, therefore, probative of the issue of the defendants' knowledge of the contents of the film. It was for the judge to determine whether their probative value to show knowledge would outweigh any possible prejudice to the defendants as an indication that they were part of an interstate trade in pornography. Leach & Liacos, *supra* at 295. Even if some of that evidence had been cumulative, it would have been admissible in the discretion of the judge. *Nelson* v. *Hamlin,* 258 Mass. 331, 341 (1927). There was likewise no abuse of discretion in the exclusion of evidence offered by the defendants with respect to the numbers of patrons of the theatre, the corporation's cash deposits, and zoning regulations which located the theatre in or near the adult entertainment district or in the judge's denial of the defendants' motion for a view of the district. The admission of that evidence could have improperly focused the jury's attention upon a limited geographical area and upon a limited segment of the population. The judge in the exercise of sound discretion could have determined that this evidence would have served only to confuse the jury and would not have assisted them in reaching an understanding of the standards held by the average citizen of the Commonwealth as required by G. L. c. 272, § 29. For the same reasons, there was no abuse of discretion in the denial of the motion for a view. *Commonwealth* v. *McGaffigan,* 352 Mass. 332, 336 (1967). *Commonwealth* v. *Crespo,* 3 Mass. App. Ct. 497, 501 (1975). Leach & Liacos, *supra* at 285, 286.

The judge was right in his denial of the defendants' motions to dismiss and for a new trial. The motions were based upon allegations of prejudicial pretrial publicity and bias of one juror. The basis of the motion to dismiss was the defendants' claim that a police official had made a statement to the press after trial had commenced suggesting a connection between the defendants and organized crime. There was no affirmative response to the

judge's inquiry of the jurors whether any of them had heard or read any reference to the allegedly prejudicial statement. The extent of the questioning of jurors in exploring the possible effect of prejudicial publicity rests in the discretion of the trial judge. *Commonwealth* v. *Subilosky*, 352 Mass. 153, 158 (1967). We decline to accept the defendants' suggestion, unsupported by authority, that we should adopt a per se rule requiring dismissal of a criminal complaint whenever a police official makes a potentially prejudicial statement to the press during a trial. Contrast *Commonwealth* v. *Manning*, 373 Mass. 438, 444–445 (1977).

In support of their motion for a new trial the defendants assert that it was discovered after trial that one juror might have known either or both the prosecutor and defense counsel. The motion, filed nearly two months after the trial had been concluded, was supported by an affidavit of defense counsel. The motion was addressed to the sound discretion of the judge. *Commonwealth* v. *Delle Chiaie*, 323 Mass. 615, 618–619 (1949). *Commonwealth* v. *Grace*, 370 Mass, 746, 751 (1976). The weight and import of the supporting affidavit were for the judge to assess. *Id.* at 752. The incident, a public hearing, which had allegedly demonstrated the juror's knowledge or familiarity with counsel had occurred three years prior to trial. There was no evidence that the hearing had been attended or watched by her on television. The only allegations of fact bearing on that hearing concerned not the juror herself but her husband. The judge had asked the jurors whether they were familiar or were "acquainted" with the attorneys and whether they might harbor any prejudice which would prevent them from reaching an impartial verdict. The responses to these questions given by the juror whose indifference was questioned, combined with the tenuous connection between her and the attorneys, could reasonably have led the judge to conclude that she stood indifferent. There was no error in the judge's refusal to hold an evidentiary hearing on the motion. *Common-*

*wealth* v. *Coggins*, 324 Mass. 552, 557, cert. denied, 338 U.S. 881 (1949). *Commonwealth* v. *Cresta, post* 855 (1978).

Finally, the defendants assert that where a judge of the Municipal Court of the City of Boston had imposed fines of $2,500 upon Mascolo and $2,500 upon the corporation, the Superior Court judge erred in sentencing Mascolo to serve one year in a house of correction and fining the corporation $5,000. They claim that imposition of the heavier sentences in the Superior Court impermissibly penalized them for exercising their right to a trial by jury and chilled the exercise of their First Amendment rights. They rely upon *Callan* v. *Wilson*, 127 U.S. 540, 557 (1888), and *Kansas City* v. *Darby*, 544 S.W.2d 529 (Mo. 1976). The defendants' claim is defeated by *Ludwig* v. *Massachusetts*, 427 U.S. 618 (1976). In *Ludwig* the Court analyzed and upheld the Massachusetts two-tier system under which a defendant charged with certain crimes is first tried in a District Court without a right to a jury. *Id.* at 620. See G. L. c. 218, § 26; Case Comment, Constitutional Law — *Mann* v. *Commonwealth*, 6 Suffolk U.L. Rev. 1087, 1091 (1972). The Court noted that after conviction in a District Court a defendant has the right to appeal to the Superior Court for a trial de novo to a jury. In that event the District Court conviction is vacated. *Ludwig*, 427 U.S. at 621–622. The Court observed that the defendant could in effect avoid trial at the District Court level by "admitting sufficient findings of fact" and the Court concluded that "the mere possibility of a harsher sentence does not unconstitutionally burden an accused's right to a trial by jury." *Ludwig, supra* at 626, 627. *Mann* v. *Commonwealth*, 359 Mass. 661, 663 (1971).

The defendants claim that the reasoning of *Ludwig* should not be controlling in the present case which involves obscenity. They argue that because the jury have the unique role in an obscenity case of determining the applicable standard, as well as applying it to the facts, the possibility of a heavier sentence for exercising the right to a jury trial is impermissible. We disagree with the

contention that a defendant, charged with obscenity, is impermissibly burdened by the two-tier system. Such a defendant can in effect avoid any trial in a District Court by admitting sufficient facts and proceeding to a jury trial in the Superior Court. The ensuing trial in that court is divorced from the District Court proceeding; and both parties start with a clean slate as to guilt and disposition. *Mann* v. *Commonwealth, supra,* at 664, 666.

The defendants have not claimed that any restriction was imposed upon their activity between the time of the District Court conviction and the jury trial in the Superior Court; nor have they argued that the trial in the Superior Court was delayed by the District Court proceeding. See *Ludwig,* 427 U.S. at 629.

*Judgments affirmed.*