COMMONWEALTH vs. ANTHONY MASCOLO & another.[1]

Suffolk.   December 12, 1978. — March 23, 1979.

Present: KEVILLE, ROSE, & GRANT, JJ.

*Obscenity,* Community standard. *Evidence,* Public opinion survey, Failure to prosecute.

Commercial dissemination of a sexually explicit film to consenting adults is conduct of a sufficiently public character to place it beyond the scope of private consensual conduct protected from prosecution. [277]

At the trial of complaints charging dissemination of an obscene film, the judge erred in refusing to instruct the jury that if they were unable to agree on Statewide community standards of obscenity they should find the defendants not guilty. [278-279]

At the trial of complaints charging dissemination of an obscene film, there was no error in the exclusion of a public opinion poll which examined whether the community sanctioned the dissemination of sexually explicit material to willing adults, but not whether the community regarded such material as obscene. [279]

At the trial of complaints charging dissemination of an obscene film in Boston, the judge did not abuse his discretion in excluding evidence that the film had played for a week in Beverly without prosecution. [279-280]

At the trial of complaints charging dissemination of an obscene film, the judge did not abuse his discretion in excluding evidence of the box office success of the film on a national scale to show that it had serious literary or artistic value. [280]

Defendants charged with dissemination of an obscene film in violation of G. L. c. 272, §§ 29 and 31, were not entitled to a jury drawn from a Statewide venire. [280]

COMPLAINTS received and sworn to in the Municipal Court of the City of Boston on March 5, 1977.

[1] West End Theatre, Inc., doing business as Pussycat Cinema.

On appeal to the Superior Court, the cases were tried before *Smith*, J.

*Kenneth H. Tatarian* for the defendants.

*Timothy P. O'Neill*, Assistant District Attorney (*John A. Mendlesohn*, Special Assistant District Attorney, with him) for the Commonwealth.

KEVILLE, J. The individual and corporate defendants were convicted at a jury trial of violating G. L. c. 272, §§ 29 and 31, for the knowing dissemination of an allegedly obscene film entitled "Autobiography of a Flea," and have appealed under G. L. c. 278, §§ 33A-33G. We reverse because of the failure of the trial judge to give certain instructions to the jury.

The defendants claim that the trial judge erred (1) in denying their motions to dismiss and for directed verdicts at the close of the Commonwealth's case and at the conclusion of all the evidence; (2) in refusing to give certain of their requested instructions to the jury; (3) in excluding evidence of a public opinion poll and other evidence offered to illumine the contemporary standards of obscenity in the Commonwealth; (4) in denying the defendants' motion to draw the jury from a Statewide venire; and (5) in refusing to make certain inquiries of prospective jurors.

Pertinent facts may be summarized as follows. On March 1, 1977, a police officer visited the West End Theatre and had a conversation with the defendant Mascolo who admitted to being the owner of the theatre. On March 3, the officer returned and viewed the film, "Autobiography of a Flea," which explicitly portrays acts of sexual intercourse, cunnilingus, fellatio, masturbation and ejaculation.[2] On March 4 the police seized the film pursuant to a search warrant. The film had been playing for four days during which Mascolo had been seen on the premises. There was evidence that he was the principal officer of the corporate defendant, that he managed the

---

[2] The film was shown to the jury at trial.

theatre on a daily basis and had arranged for the promotion of the film.

1. *Denial of Motions to Dismiss and for Directed Verdicts.*

(a) The defendants' argument that § 29 does not apply to commercial dissemination of a sexually explicit film to consenting adults, and, therefore, that the judge erred in denying the defendants' motions to dismiss and for directed verdicts has been rejected previously by this court. *Commonwealth* v. *Mascolo*, 6 Mass. App. Ct. 266, 272-273 (1978), cert. denied, 439 U.S. 899 (1978). The defendants rely principally on *Commonwealth* v. *Balthazar*, 366 Mass. 298, 302 (1974), vacated on other grounds sub nom. *Balthazar* v. *Superior Court*, 573 F.2d 698 (1st Cir. 1978), in which the Supreme Judicial Court, construing the prohibition of "unnatural and lascivious acts" in G. L. c. 272, § 35, held that "private consensual conduct of adults" could not be prosecuted under § 35, for to do so would violate contemporary community standards which earlier cases had found implicit in § 35. Because §§ 29 and 31 require that the determination of obscenity be made with reference to "contemporary standards of the Commonwealth," the defendants contend that *Balthazar* is relevant to cases arising under these sections as well. However, commercial dissemination of a film advertised and made accessible to the adult public is conduct of a sufficiently public character to place it beyond the scope of private consensual conduct protected by *Balthazar*. Compare *Commonwealth* v. *King*, 374 Mass. 5, 14 (1977); *Commonwealth* v. *Bucaulis*, 6 Mass. App. Ct. 59, 66 (1978), cert. denied sub nom. *Bucuvalas* v. *Massachusetts*, 439 U.S. 827 (1978). Contrast *Commonwealth* v. *Scagliotti*, 373 Mass. 626, 628-629 (1977). But see *Commonwealth* v. *Trainor*, 374 Mass. 796, 811 n.8 (1978) (Abrams, J., dissenting).[3]

---

[3] The court in *Balthazar*, in applying its perception of changing community values to limit the scope of § 35, sought obliquely to pro-

Commonwealth v. Mascolo.

The defendants' remaining grounds for assertion of error in the denial of their motions to dismiss and for directed verdicts lack merit and do not warrant discussion. The case was properly submitted to the jury.

2. *Jury Instructions.*

The judge refused the defendants' request that he instruct the jury that "if you are unable to agree on what the views of the average person are on the subject of prurient or patent offensiveness, then I instruct you to return a verdict of not guilty as to each defendant."[4] The defendants argue that the refusal to give that instruction was reversible error because it deprived the jury of guidance as to what they should do if they were to determine that there were no Statewide community standards of obscenity or if they were to disagree on what those standards were. The basis for the defendants' assertion is language employed in *Commonwealth* v. *Trainor*, 374 Mass. at 800. The *Trainor* opinion followed the trial in the instant case, so the judge here, whose instructions were in all other respects accurate and comprehensive, did not have the benefit of that opinion.

tect the constitutionality of that statute. See *Commonwealth* v. *Hill*, 377 Mass. 59, 63 (1979). There is no similar constitutional problem with respect to §§ 29 and 31. In a situation similar to that presented here, it has been determined that the statutory scheme of §§ 29 and 31 is constitutional. *Commonwealth* v. *707 Main Corp.* 371 Mass. 374, 381-382 (1976). *Commonwealth* v. *Mascolo*, 6 Mass. App. Ct. at 272-273. See *Commonwealth* v. *Trainor*, 374 Mass. 796, 798-799 (1978). But see *id.* at 807-811 (Abrams, J., dissenting). Thus, the defendants' attempt to limit the scope of §§ 29 and 31 is unavailing, either on the ground of statutory construction based on *Balthazar* or on constitutional grounds.

[4] In evaluating a film under § 29 the trier of fact must refer to § 31, which defines obscene as that which, "taken as a whole . . . (1) appeals to prurient interest of the average person, applying the contemporary standards of the commonwealth; (2) depicts or describes sexual conduct in a patently offensive way; and (3) lacks serious literary, artistic, political or scientific value." See *Miller* v. *California*, 413 U.S. 15, 24 (1973).

In *Trainor*, discussing the Commonwealth's standards of obscenity, the court stated that "[a] defendant is entitled to rulings or instructions that, if the trier of fact cannot determine Commonwealth norms, the defendant is entitled to a finding in his favor." *Id.* Such an instruction was apparently viewed by the court in *Trainor* as "rooted in constitutional considerations," and the defendants were therefore "entitled to the benefit of it." *Commonwealth* v. *Hill*, 377 Mass. 59, 63 (1979). See *Commonwealth* v. *Reilly*, 5 Mass. App. Ct. 435, 436-438 (1977). We must conclude that the judge's refusal to grant the requested instruction was error requiring reversal of the judgments.[5] We turn to other issues raised on appeal which may arise in the event of a new trial.

3. *Exclusion of Evidence.*

(a) The judge acted within his discretion in excluding the results of a public opinion poll offered by the defendants to assist the jury in ascertaining community standards with respect to the film. While the court in *Trainor*, 374 Mass. at 802, acknowledged the value of an opinion poll as an aid in the search for community standards of obscenity, it upheld the exclusion of a poll offered in that case which, like the poll offered here, examined primarily whether the community sanctioned the dissemination of sexually explicit material to willing adults, but not whether the community regarded such material as obscene in itself. *Id.* at 805-806.

(b) Likewise there was no abuse of discretion in the judge's exclusion of the defendants' offer to show that the "Autobiography of a Flea" had played for a week in Beverly, Massachusetts, without prosecution "[M]ere failure to prosecute does not begin to constitute a sufficient showing" of community acceptance. *United States* v. *Womack*, 509 F.2d 368, 380 (D.C. Cir. 1974). Reasons for fail-

---

[5] Other instructions requested by the defendants were derived from their misreading of the *Balthazar* case and were properly refused by the judge.

ure to prosecute the showing of this film in Beverly are speculative. The defendants failed to show that the authorities had knowledge either of the film's content or that it was being shown in that community. Moreover, the proffered evidence would have minimal bearing on the discernment of standards of obscenity in the Commonwealth as a whole.

Similarly, there was no abuse of discretion in the exclusion of evidence offered by the defendants of the box office success of the film on a national scale to show that it had serious literary or artistic value. (See note 4, *supra.*) The judge could reasonably have concluded that the film's national popularity had no bearing upon the question of its literary or artistic value. Probative value of that evidence would be slight in any event where sales figures referred not to the Commonwealth of Massachusetts but to the country as a whole.

4. *Jury Selection.*

Here, as in *Commonwealth* v. *Mascolo*, 6 Mass. App. Ct. at 271-272, the defendants challenge the jury selection procedure on two grounds. They claim error in the denial of their motion for a Statewide venire and in the inadequacy of the judge's examination of prospective jurors. In support of the first point, the defendants advance the same argument made in the earlier *Mascolo* case, claiming that only a jury drawn from a Statewide venire could discern and apply contemporary standards of the entire Commonwealth as required by G. L. c. 272, §§ 29 and 31. We note that the questions sought to be addressed to prospective jurors by the defendants here are identical to those requested and refused in the earlier case. We held there that both of the defendants' requests were properly denied. The defendants have advanced no reason which persuades us that a different result should be reached in the present case.

*Judgments reversed.*
*Verdicts set aside.*