**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Eldon Raybourne CHRISTIAN, Defendant-Appellant.**

**No. 76–1616.**

United States Court of Appeals, Tenth Circuit.

Submitted Dec. 30, 1976.

Decided Feb. 22, 1977.

David L. Russell, U.S. Atty., Oklahoma City, Okl., for plaintiff-appellee.

Herbert S. Kassner, Kassner & Detsky, New York City, for defendant-appellant.

Before PICKETT, SETH and DOYLE, Circuit Judges.

PICKETT, Circuit Judge.

This appeal presents the question of the validity of a warrant for the search and seizure of a motion picture film being shown to the public in Oklahoma City, Oklahoma, and alleged to be obscene. On February 26, 1975, the film in question was seized by Oklahoma City police in the execution of a search warrant issued by a state district judge upon the application of an Oklahoma City police officer. In a criminal prosecution against the theater manager, the state court sustained a motion to suppress, holding that the film was illegally seized and was inadmissible in the state court case. Later, federal authorities obtained possession of the film and on March 3, 1976, an indictment was returned charging appellant Christian, the operator of the Chieftain Theater in Oklahoma City, Oklahoma, with the use of a common carrier for the interstate transportation of an obscene film in violation of 18 U.S.C. § 1462. Upon trial, he was convicted and sentenced.

Christian filed a pretrial motion to suppress the use of the film as evidence in this case. The motion set forth the state criminal proceeding against the manager of the Chieftain Theater and the action of the state court in holding that the search and seizure was a violation of the constitutional rights of the accused. A copy of the affidavit upon which the search warrant was issued was attached to the motion. The affidavit contained the following statement:

Affiant is a police officer with the Oklahoma City Police Department and was at the above location on February 26, 1975 and at that time observed a movie called "SEXUAL CUSTOMS IN SCANDINAVIA" which movie film showed unnatural copulation and simulated natural sexual acts which were filthy, morally foul, polluted, nasty, dirty, vulgar, debasing, having a tendency to corrupt or debauch, indecent, morally offensive and depraving, lascivious, wanton and lustful, lewd, licentious, lecherous, dissolute, debauched, impure, salacious and pornographic, depicting numerous scenes of sexual intercourse male and female, one female masturbating, and unnatural copulation between male and female and affiant has reason to believe that said films are still at the above location.

The motion alleged that the warrant was issued by a judicial officer without having first viewed the film and was contrary to the requirements of *Heller v. New York,* 413 U.S. 483, 93 S.Ct. 2789, 37 L.Ed.2d 745 (1973), and *Hess v. State,* 536 P.2d 366 (Okl.Cr.1975).[1] The district court declined to follow the reasoning of the Oklahoma Court of Criminal Appeals and denied the motion to suppress. We agree with the conclusion of the district court.

There is no dispute as to the relevant facts. Late in December of 1974, the Chieftain Theater was closed and Christian made arrangements with the leaseholders to reopen it for the purpose of showing motion pictures to the public. After a study of the area, Christian concluded that the only feasible operation of the theater was to show pictures which were sex-oriented and for adults only. He made arrangements with Mature Pictures, Inc. of New York to furnish him motion picture films suitable for this purpose. These films were transported to the theater from New York by common carrier. Among them was the film, "Sexual Customs in Scandinavia." After the film had been shown for some time, an Oklahoma police officer entered the theater and viewed the film at a regular showing. He reported to the state district attorney for Oklahoma County, Oklahoma, and the aforesaid affidavit was prepared and executed for the purpose of obtaining a warrant to search for and seize the film. On the basis of that affidavit a state district judge concluded that there was probable cause for the issuance of a search and seizure warrant. Armed with the warrant, the police officer returned to the theater, entered the projection booth, seized the film as evidence, and arrested the manager. This was the search declared to be invalid by the state court, resulting in the termination of state criminal prosecution.

The Supreme Court of the United States, in a series of cases during the year 1973, reexamined its former standards with respect to cases relating to materials alleged to be obscene. The rule in *Roth v. United States,* 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957), to the effect that the use of obscene material is without the protection of the First Amendment to the Constitution, was reaffirmed. *Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973); *Paris Adult Theatre I v. Slaton,* 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973); *United States v. Orito,* 413 U.S. 139, 93 S.Ct. 2674, 37 L.Ed.2d 513 (1973). In *Miller, supra,* the Court reviewed former definitions of obscenity as they applied to regulation by state law. There it was said:

1. In the *Hess* case, the Oklahoma Court of Criminal Appeals construed *Heller v. New York, supra,* and *Roaden v. Kentucky,* 413 U.S. 496, 93 S.Ct. 2796, 37 L.Ed.2d 757 (1973), to

require a judicial officer to view a film being shown to the public and alleged to be obscene prior to the issuance of a warrant for its seizure.

The basic guidelines for the trier of fact must be: (a) whether "the average person, applying contemporary community standards" would find that the work, taken as a whole, appeals to the prurient interest, *Kois v. Wisconsin, supra,* [408 U.S. 229] at 230 [92 S.Ct. 2245, 33 L.Ed.2d 312] quoting *Roth v. United States, supra* [354 U.S.] at 489 [77 S.Ct. 1304] (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value. We do not adopt as a constitutional standard the "*utterly* without redeeming social value" test of *Memoirs v. Massachusetts,* 383 U.S. [413], at 419 [86 S.Ct. 975, 16 L.Ed.2d 1]; that concept has never commanded the adherence of more than three Justices at one time. See *supra,* at 21, 93 S.Ct. at 2613. If a state law that regulates obscene material is thus limited, as written or construed, the First Amendment values applicable to the States through the Fourteenth Amendment are adequately protected by the ultimate power of appellate courts to conduct an independent review of constitutional claims when necessary. . . . (413 U.S. 24, 25, 93 S.Ct. 2615)

In that group of cases were *Heller v. New York, supra,* and *Roaden v. Kentucky,* 413 U.S. 496, 93 S.Ct. 2796, 37 L.Ed.2d 757. These two cases considered First Amendment rights when there were seizures of motion picture films being commercially shown to the public in regularly scheduled performances. In *Heller,* certiorari was granted to determine whether a judicial officer who has previously viewed a film may constitutionally issue a warrant for the seizure of a motion picture film as evidence in a criminal case without first conducting an adversary hearing on the issue of obscenity. In upholding the search, the Court said:

. . . This Court has never held, or even implied, that there is an absolute First or Fourteenth Amendment right to a prior adversary hearing applicable to all cases where allegedly obscene material is seized. See *Times Film Corp. v. Chicago,* 365 U.S. 43 [81 S.Ct. 391, 5 L.Ed.2d 403] (1961); *Kingsley Books, Inc. v. Brown,* 354 U.S. 436, 440–442 [77 S.Ct. 1325, 1 L.Ed.2d 1469] (1957). In particular, there is no such absolute right where allegedly obscene material is seized, pursuant to a warrant, to preserve the material as evidence in a criminal prosecution. In *Lee Art Theatre v. Virginia, supra* [392 U.S. 636, 88 S.Ct. 2103, 20 L.Ed.2d 1313 (1968)] the Court went so far as to suggest that it was an open question whether a judge need "have viewed the motion picture before issuing the warrant." Here the judge viewed the entire film and, indeed, witnessed the alleged criminal act. . . (413 U.S. 488, 93 S.Ct. 2792)

The Court continued:

. . . If such a seizure is pursuant to a warrant, issued after a determination of probable cause by a neutral magistrate, and, following the seizure, a prompt judicial determination of the obscenity issue in an adversary proceeding is available at the request of any interested party, the seizure is constitutionally permissible. . . . (413 U.S., 492, 93 S.Ct. 2795)

Judged by any judicial standards, the sexual activities explicitly described in the officer's affidavit were "hard core" pornography, obscene, and constituted probable cause for the issuance of the warrant. *United States v. Sherpix, Inc.,* 168 U.S.App. D.C. 121, 512 F.2d 1361 (1975).

In *Roaden, supra,* the Court disapproved a seizure of a motion picture film by a police officer who, after having viewed the film at a regular showing, relying on his independent judgment, determined that it was obscene and made an arrest without a warrant. The substance of the *Roaden* decision was that such a seizure is unreasonable unless made on a warrant issued by a neutral judicial officer after a valid determination of probable cause. This rule was also recognized in *Heller.*

In *Roaden* and *Heller* the Court said that in making such seizures for evidentiary pur-

poses they must be accomplished with the least restraint on the showing of the film until after there has been an opportunity for a prompt adversary hearing on the issue of obscenity. It was indicated that if there was a copy of the film being shown it should not be seized in the first instance. In distinguishing seizures of motion picture film from those made in other types of crimes, the Court said in *Roaden*:

Moreover, ordinary human experience should teach that the seizure of a movie film from a commercial theater with regularly scheduled performances, where a film is being played and replayed to paid audiences, presents a very different situation from that in which contraband is changing hands or where a robbery or assault is being perpetrated. In the latter settings, the probable cause for an arrest might justify the seizure of weapons or other evidence or instruments of crime, without a warrant. (Citing cases) Where there are exigent circumstances in which police action literally must be "now or never" to preserve the evidence of the crime, it is reasonable to permit action without prior judicial evaluation. (Citing cases) The facts surrounding the "massive seizures" of books in *Marcus* [*Marcus v. Search Warrants,* 367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed.2d 1127 (1961)] and *A Quantity of Books,* [*A Quantity of Books v. Kansas,* 378 U.S. 205, 84 S.Ct. 1723, 12 L.Ed.2d 809 (1964)] or the seizure of the film in *Lee Art Theatre,* presented no such "now or never" circumstances. (413 U.S. 505, 506, 93 S.Ct. 2801)

During the trial of the case there was some evidence to the effect that when the film "Sexual Customs in Scandinavia" was shipped to the Chieftain Theater there was a "back-up" copy of the film to be used in case the original was confiscated by authorities. At the time of the execution of the warrant this copy was not in the projection booth, but was secreted in a cabinet under the concession station on the first floor. It appears that several days after the execution of the warrant this back-up copy came into the possession of the state district attorney and so far as is known remained

there. There is nothing in the record that shows the circumstances of the seizure, if it was a seizure, of the "back-up" film. The record does not disclose what occurred in state court between the time of the original seizure and when possession of the back-up film was obtained. No showing was made that there was not available a prompt adversary hearing on the issue of obscenity in the state court immediately after the initial seizure. For the first time it is contended on appeal that the seizure was an unconstitutional restraint of expression amounting to censorship as denounced in *Roaden v. Kentucky, supra.* The record does not support this contention.

AFFIRMED.