**IMPERIAL DISTRIBUTORS, INC., et al., Plaintiffs,**

v.

**UNITED STATES of America et al., Defendants.**

No. 79–165.

United States District Court, D. Massachusetts.

July 12, 1979.

Nelson S. Baker, Boston, Mass., Herald P. Fahringer, Lipsitz, Green, Fahringer, Roll, Schuller & James, Buffalo, N.Y., for plaintiffs.

Charles E. Chase, Asst. U.S. Atty., Boston, Mass., for defendants.

## MEMORANDUM AND ORDER

SKINNER, District Judge.

This is a motion for the return of magazines and business records seized pursuant to warrants issued by magistrates in this district and in the district of Rhode Island. A similar motion was presented to the District Court of Rhode Island. Chief Judge Pettine of that court declined to entertain the motion on the ground that the property was being held for consideration by a grand jury in the District of Massachusetts, that an indictment based on this property might be returned, that this matter could be determined on a motion to suppress in the District of Massachusetts, and that he should not interfere with the progress of a criminal case in Massachusetts. A petition for a writ of mandamus directing him to exercise jurisdiction under F.R.Crim.P. 41(e) was denied by the Court of Appeals (No. 78–1559, January 4, 1979), and a petition for writ of certiorari was denied by the Supreme Court of the United States, —— U.S. ——, 99 S.Ct. 2042, 60 L.Ed.2d 402 (1979).

█ Suppression of material seized in Rhode Island (or anywhere else) would be properly before a judge of this district if the government intended to use such material in a criminal action returned here. Under Rule 41(e), however, the motion is addressed only to the return of property seized within this district. Disposition of the property seized in Rhode Island must await the filing of a criminal action, or, if it appears that no indictment will be returned, reconsideration by the district judge in Rhode Island. The same principles apply to property seized under warrants issued by state courts of Rhode Island.

I will accordingly consider only the material seized in Massachusetts.

On February 28, 1978, an FBI agent submitted an application for a search warrant to Magistrate Cohen with a supporting affidavit. The affidavit detailed at length the observations of the agent and his colleagues of a series of deliveries by truck of suspected pornography from the plaintiffs' various places of business in Rhode Island to retail pornography outlets in the lower Washington Street area of Boston known as "the Combat Zone." Cartons unloaded at one such truck delivery were observed to contain the magazines *Turkish Delight, Sex Foto Fiction No. 1* and *Sex Foto Fiction No. 2.* One of the agents purchased one copy of each of these magazines, and these copies were submitted to the magistrate with the application. The affidavit contained information that a blue panel truck of a certain registration had left plaintiffs' premises in Rhode Island that morning and was expected to make a delivery of suspected pornography immediately.

On the basis of this submission the magistrate entered an order in which he found the three magazines to be obscene and commanded the agents to search the blue panel truck "in order to determine whether or not there exists therein obscene materials of the same tenor as Turkish Delight, Sex Photo Fiction No. 1 and Sex Photo Fiction No. 2." He also issued a search warrant.

Thereafter the agents seized the truck, arrested the driver and drove the truck to the FBI garage. There is a dispute as to whether it was necessary to move the truck to avoid impeding traffic and causing a public commotion, as reflected in the affidavits of the agent and the driver of the truck. I will assume that it would have been possible to search the truck on the street. In any case, the truck was searched, but nothing was seized. Although seizure was authorized by the terms of the warrant, the agents considered themselves bound by the terms of the contemporaneous order quoted above.

After completing this search, the agent applied for a second warrant to search for and seize nine additional named magazines

and five named films, which in his affidavit he claimed to have seen in the truck. The magistrate then boarded the truck and personally viewed the magazines and parts of the films. The magistrate entered an order in which he made a finding that the items were obscene and issued a warrant for the search of the truck and the seizure of the nine named magazines, five named films, and related business records. Three copies of each magazine were seized and one copy of each film, along with business records related to deliveries to retailers in Boston.

The truck was released to the driver after having been held for several hours, but was not in fact removed for several days. The plaintiffs were notified of the seizure immediately thereafter in accordance with the magistrate's order. The complaint against the driver was eventually withdrawn.

The resolution of this motion turns on the propriety of the issuance and execution of the first warrant.

▇▇ The facts set forth in the agent's first affidavit were sufficient to authorize a warrant for the search and seizure of suspected contraband other than magazines and films presumptively entitled to the protection of the First Amendment. *United States v. Cortellesso*, 601 F.2d 28 (1st Cir. 1979). The search cannot be validated as incidental to the valid arrest of the driver of the van for two reasons: (1) the validity of the arrest is subject to the same First Amendment considerations as the search of the van; and (2) it it clear from the affidavits that the agents had determined to search before the arrest was made, or, in short, that the arrest was incidental to the search rather than the other way around.

▇▇ There are special rules governing the seizure of magazines, books and films resulting from the interaction of the First and Fourth Amendments:

1. Before such material is seized as obscene, a neutral detached magistrate must view the material, "focus searchingly on the question of obscenity" and determine that there is probable cause for the issuance of a war-

rant. *Marcus v. Search Warrant*, 367 U.S. 717, 731–733, 81 S.Ct. 1708, 6 L.Ed.2d 1127 (1961).

2. An adversary proceeding is required before a final restraint on the distribution of such material but not before the seizure of sample items to preserve them as evidence, provided a prompt adversary hearing is available at the request of any interested party. *Heller v. New York*, 413 U.S. 483, 493, 93 S.Ct. 2789, 37 L.Ed.2d 745 (1973).

3. The magistrate may not put himself at the head of a search party and compress the various procedural steps, filling in the search warrant with a description of the items seized after the fact. *Lo-Ji Sales, Inc. v. State of New York*, —— U.S. ——, 99 S.Ct. 2319, 60 L.Ed.2d 920 (1979).

▇▇ When a search and seizure of obscene material is proposed to be conducted at a retail outlet or places where the public is invited, the requirement that the material be first submitted to a neutral magistrate may be satisfied by purchasing the offending book or magazine or viewing a film. Enforcement officers who seek evidence against wholesalers and distributors have a more difficult problem: How do they get the material before the magistrate so that he can make the determination prerequisite to the issuance of a search warrant?

▇▇ In my opinion, the two-stage procedure employed in this case is a reasonable response to the problem, and is a reasonable variant on the procedure suggested by the Ninth Circuit in *United States v. Sherwin*, 572 F.2d 196, 200 (9th Cir. 1977). The first order of the magistrate called for a search only. The truck was detained for only so long as was reasonably necessary to provide an opportunity for a search and review of the suspect material by the magistrate.

Plaintiffs in their brief and argument focus on the impropriety of issuance of the first order and warrant. I have no doubt that there was probable cause apparent in

**298**

the agent's affidavit for the issuance of the warrant in Fourth Amendment terms. The problems are First Amendment ones.

The affidavit contained a sufficient basis for a finding of probable cause that the plaintiffs were engaged in a continuing course of conduct of transporting to the Combat Zone material characterized by the agent as obscene, and that the blue panel truck was employed for that purpose. The magistrate not only had the agent's explicit description (which would not have been conclusive), but samples of what he meant by obscene.

Plaintiffs next assert that the direction to search for material "of the same tenor" as *Turkish Delight*, and *Sex Foto Fiction No. 1* and *Sex Foto Fiction No. 2* was not sufficiently specific and left too great a measure of discretion to the agent. To resolve this issue I called for and inspected the magazines in question, over the plaintiffs' objection. The "tenor" of these publications is unmistakable. They are clearly what the Second Circuit has aptly described as "fungible smut." *United States v. Cangiano*, 491 F.2d 906, 913 (2d Cir. 1974).

The asserted danger to First Amendment rights is that police will be unable to distinguish between obscenity and protected material; specifically, that the agents here would be unable to distinguish between *Turkish Delight*, and, say, a photo-illustrated edition of *Lady Chatterley's Lover* or *The World According To Garp*, in which explicit sexual descriptions are integral aspects of a literary exposition. Even conceding that the track record of the police as literary critics is poor, I am satisfied that the practical danger is minimal. Even if it existed, it would only last until the magistrate's review, which in this case was prompt. The restraint on the free flow of ideas, if any there were, was scarcely greater than might have resulted from a blown tire on the blue panel truck.

 That the search of the truck was accomplished at the FBI garage rather than under public gaze on Washington Street does not raise a constitutional question. *Cf. State of Arkansas v. Sanders,* —— U.S.

——, ——, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979); *Cambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970).

Accordingly, the motion to return seized property is DENIED with respect to the Rhode Island seizure because the material was not seized in this district, and is DENIED with respect to property seized in this district because the seizure violated no constitutional rights of the plaintiffs.