**UNITED STATES of America, Plaintiff-Appellee,**

v.

**David Edward THOMAS, Defendant-Appellant.**

**No. 78–1766.**

United States Court of Appeals, Tenth Circuit.

Argued Sept. 12, 1979.

Decided Jan. 14, 1980.

Stephen M. Munsinger, Sp. Asst. U. S. Atty., Denver, Colo., Joseph F. Dolan, U. S. Atty., Denver, Colo., for plaintiff-appellee.

Anthony L. Worth, Denver, Colo. (Charles F. Murray, Denver, Colo., on the brief), for defendant-appellant.

Before HOLLOWAY and DOYLE, Circuit Judges and BOHANON, District Judge.*

BOHANON, District Judge.

David Edward Thomas appeals convictions on 21 counts of causing obscene materials to be mailed in violation of 18 U.S.C. § 1461.

In January, 1977, following the failure of the United Parcel Service (UPS) to locate the addressee of a certain package sent from Colorado to California, the package was returned to Colorado but also found undeliverable to the return address. When inadvertently broken open during sorting, the package was found to contain what UPS employees perceived to be "sexually oriented materials." Following their notification, FBI agents visited the UPS facility, examined the parcel, and determined that it contained, *inter alia*, two rolls of 8mm film, a catalog and approximately 150 envelopes with checks and order blanks, pre-addressed to Amida-Euro (A&E) in Denver, Colorado. A&E's listed address was later determined to be that of the Academy Answering Service (the Academy), which was hired by A&E to receive and forward mail. Inquiries at the Academy supported by a subpoena and search warrants led to information which incriminated appellant David E. Thomas.

Appellant contends that the trial court erred:

(1) in failing to grant a pretrial motion to suppress evidence obtained at the Academy through search warrants issued without any judicial determination of obscenity;

---

* Of the Northern, Eastern and Western Districts of Oklahoma, sitting by designation.

(2) in defining the relevant "contemporary community standard" as being that of the Denver metropolitan area;

(3) in not granting appellant's motion to suppress all evidence resulting from the FBI's warrantless seizure of the original package;

(4) in not ruling as a matter of law that 18 U.S.C. § 1461 failed to delineate an offense applicable to appellant;

(5) in failing to properly voir dire the jury as to their understanding of the prurient interests of certain deviant sexual groups;

(6) in failing to require expert testimony on the prurient interests of those deviant sexual groups.

■ For purposes of adjudging materials obscene under federal law, the trier of fact must determine: (a) that the average person applying contemporary community standards would find that the work, taken as a whole, appeals to the prurient interest; (b) that the work depicts or describes sexual conduct in a patently offensive way;[1] and (c) that the work, taken as a whole, lacks serious literary, artistic, political and scientific value. *Miller v. California*, supra, 413 U.S. at 24, 93 S.Ct. 2607; *Hamling v. United States*, 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974).

Relying on the case of *United States v. Tupler*, 564 F.2d 1294 (9th Cir. 1977), appellant argues that two search warrants were issued illegally in this case without a "prior judicial determination of probable obscenity." In *Tupler*, the court struck down a search warrant used to seize certain allegedly obscene films, stating at 1297–1298:

"First Amendment protection of allegedly obscene material includes the requirement that no seizure warrant be issued without a procedure 'designed to

focus searchingly upon the question of obscenity.'

. . . . .

A searching focus on obscenity requires the issuing judge or magistrate to base his evaluation of probable cause on direct evidence of the contents of at least a fair sample of the material itself.

. . . . .

Because the films were seized without an examination of their contents, the defendants' motion to suppress them should have been granted."

Judge Sneed's concurring opinion in *Tupler* agreed that the warrant lacked probable cause, but disagreed that prior judicial examination of the film was required. He stressed that a warrant should be upheld where its supporting affidavit relates legally sufficient observations by the officer, concluding: "The fundamental issue is whether there exists probable cause to believe the material obscene." *Tupler*, supra at 1298. We agree. See *Heller v. New York*, 413 U.S. 483, 93 S.Ct. 2789, 37 L.Ed.2d 745 (1973).

■ The rule in this circuit allows a warrant to be issued without prior judicial review of the film where probable cause results from the affidavit's description of the film's contents. *United States v. Christian*, 549 F.2d 1369 (10th Cir. 1977). In *Christian*, supra, at 1371 the court stated: "Judged by any judicial standards, the sexual activities explicitly described in the officer's affidavit were 'hard core' pornography, obscene, and constituted probable cause for the issuance of the warrant."

■ The affidavit underlying the first search warrant herein contained a description of the circumstances attending the FBI's examination of the package at UPS, a description of the contents thereof,[2] and

1. In a § 1461 prosecution, this refers to: "(a) [p]atently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated; [or] (b) [p]atently offensive representations or descriptions of masturbation, excretory functions, and lewd exhibitions of the genitals." *Miller v. California*, 413

U.S. 15, 25, 93 S.Ct. 2607, 2615, 37 L.Ed.2d 419 (1973), in conjunction with *Smith v. United States*, 431 U.S. 291, 301, 97 S.Ct. 1756, 52 L.Ed.2d 324 (1977).

2. "Affiant AUSA Winchester looked at the contents of the package and learned the package contained: (1) Approximately 152 airmail en-

the following facts, *inter alia*. A&E's advertised address was actually that of the Academy Answering Service, a telephone and mailing service. Academy records revealed appellant to be the individual doing business as A&E, with a forwarding address at that time in Burbank, California. Mail previously directed to A&E via Academy, whose contents had been inadvertently observed by Academy employees, involved pornographic literature offerings by appellant. At the time the first warrant was sought, Academy possessed four packages addressed to A&E and intended for delivery to appellant.

The affidavit also related conversations wherein the affiant, an FBI agent, was advised by persons acquainted with appellant that he was in the pornography business. Attached to the affidavit were photocopies of materials in the UPS package, including photographs of diverse sexual activities from a booklet entitled "Children-Love," and circulars identifying A&E as a "pornographic mail-order business." Based on the affidavit and its attachments, the issuing magistrate had reasonable cause to believe that the UPS package contained obscene materials mailed in violation of federal law, and that the four packages located at the Academy and addressed to A&E did also.

Six months later a second search warrant was issued, authorizing seizure of two more packages and a box of letters, all addressed to A&E and located at Academy. The issuing magistrate found probable cause to believe that the seizure would divulge pornographic materials or other evidence relating to violations of federal obscenity statutes (18 U.S.C. §§ 1461, 1462). In addition to reciting the materials contained in the first affidavit, the second warrant's affidavit detailed the contents of four films seized under the first warrant, which explicitly depicted sexual activities between people and animals, adults and children, and homosexuals. The affidavit also contained information gained from Academy employees that the new materials had been received addressed to A&E, and were currently in Academy's possession. The second warrant, as well as the first, issued upon probable cause, without constitutional frailty.

At trial the jury was instructed that the applicable "contemporary community standard" was that of the Denver metropolitan area. Appellant notes that mailing situs in the case ranged throughout the continental United States, Puerto Rico and Canada, and he urges that the community standards of each of these locales should have been presented to the jury and applied by them.

A finding of obscenity must rest, *inter alia*, on a determination that "the average person," in applying "contemporary community standards" to the material taken as a whole, would determine that such "appeals to the prurient interest." *Miller v. California*, supra, 413 U.S. at 24, 93 S.Ct. 2607. Obscenity is thus considered to be contextual, in that differences in the contemporary standards of different communities create different conclusions as to obscenity.[3] "People in different States vary in their tastes and attitudes, and this diversity is not to be strangled by the absolutism

---

velopes, unused, some pre-addressed to A&E, 1611 South Federal, Suite 240, Denver, Colorado 80219. (2) Two copies of an 8mm color movie film, entitled 'Film No. 1294, Special Little Girl Lust.' (3) One copy of a booklet entitled 'Children-Love,' depicting pornographic scenes utilizing children. Xerox copies of representative pages are attached to this affidavit as exhibit 1. (4) At least 100 copies of unused form letters with order blanks directed to future customers from an individual utilizing the name SENZ which specified what literature was available. A copy of the form letter is attached as exhibit 2. (5) Numerous opened letters from various individuals throughout the United States ordering literature and in most cases the letters were accompanied by enclosure of personal check or money order payable to Amida-Euro (A&E). A copy of a representative order is attached as exhibit 3." Affidavit for search warrant, dated March 31, 1977.

3. "It is neither realistic nor constitutionally sound to read the First Amendment as requiring that the people of Maine or Mississippi accept public depiction of conduct found tolerable in Las Vegas, or New York City." *Miller v. California*, supra, 413 U.S. at 32, 93 S.Ct. at 2619.

of imposed uniformity." *Miller v. California*, supra at 33, 93 S.Ct. at 2620.

Additionally, local community standards are appropriate because they are more cohesive and concrete than any hypothetical national standard.[4]

■ When the allegedly obscene materials are placed into evidence, the juries' overall background, including their familiarity with their communities' standards renders expert testimony unnecessary, if not irrelevant. *Paris Adult Theater I v. Slaton*, 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973).[5] Of course, this benefit occurs only when, as here, the jury is from the community whose standards are applicable. Otherwise, capturing and conveying a community's "contemporary standards" vis-a-vis expert testimony is required, a difficult task at best. See *United States v. McManus*, 535 F.2d 460 (8th Cir. 1976).

■■ The government can bring a case of this type in either the district where the material was mailed or the district where it was received. *United States v. McManus*, supra. This case was filed and prosecuted in an appropriate district, the district to which the materials were mailed, and the "contemporary community standards" of that locale provided the appropriate standard for determining obscenity. Asking the jury to try to apply other communities' standards would have been inappropriate.

Next, appellant alleges that the FBI's request of UPS to detain the initial package constituted an unconstitutional seizure and that all evidence flowing therefrom should have been suppressed, since the direct and indirect products of illegal searches and seizures are evidentially inadmissible. *Wong*

Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

A series of events led to acquainting the FBI with the package and its contents.

■ First, the broken package's contents were examined by UPS employees, who then contacted the FBI. It is well settled that independent searches by private citizens are unaffected by Fourth Amendment prohibitions against unreasonable searches and seizures, and that results thereof constitute admissible evidence. *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *United States v. Sherwin*, 539 F.2d 1 (9th Cir. 1976); *United States v. Kelly*, 529 F.2d 1365 (8th Cir. 1976).

Next, FBI agents visited the UPS office and examined the package's contents. The agents were expressly invited onto the premises and were presented with materials previously opened and searched.

The circuit courts of appeals are divided on whether an illegal seizure occurs when allegedly obscene materials are uncovered by the common carrier transporting them, and subsequently turned over to law officers. In *United States v. Kelly*, supra, a UPS manager, while examining a package damaged in transit, discovered printed materials perceived by him to be obscene. An FBI agent was invited to the premises, who inspected the materials and seized several magazines. UPS completed delivery of the remaining materials. No warrant was obtained prior to the material's seizure. The warrantless seizure was held illegal, with the court commenting: "Although the FBI seizure of the books and magazines was made with the consent of the UPS, it is

---

4. "It is my belief that when the Court said in Roth that obscenity is to be defined by reference to 'community standards,' it meant community standards—not a national standard, as is sometimes argued. I believe that there is no probable 'national standard' . . . ." *Jacobellis v. Ohio*, 378 U.S. 184, 84 S.Ct. 1676, 12 L.Ed.2d 793 (1964) (Chief Justice Warren, dissenting). Quoted with approval in *Miller v. California*, supra, 413 U.S. at 32, 93 S.Ct. at 2619.

5. "This is not a subject that lends itself to the traditional use of expert testimony. Such testimony is usually admitted for the purpose of explaining to lay jurors what they otherwise could not understand. [citation omitted] No such assistance is needed by jurors in obscenity cases; indeed the 'expert witness' practices employed in these cases have often made a mockery out of the otherwise sound concept of expert testimony." *Paris Adult Theater I v. Slaton*, supra, 413 U.S. at 56, 93 S.Ct. at 2634.

clear that such consent does not satisfy the requirements of the Fourth Amendment." at 1371. Only the seizure was condemned. The initial UPS search was found nonviolative of the defendant's constitutional rights; and neither the FBI's warrantless visit to UPS premises nor the agent's examination of the materials was held illegal. In discussing why a warrant should have been obtained prior to the material's seizure, the court noted: "The FBI had ample opportunity to obtain a valid warrant based on the affidavit of Mr. Spitznagel [the UPS manager] or Agent McDermott [the investigating FBI agent] prior to the seizure of any books or magazines." at 1373. But see *United States v. Sherwin*, supra.

 The holding in *Kelly* does not render inadmissible the controverted evidence in this case. It is problematic that any seizure occurred as to the UPS package herein. The agent's act of photocopying, with UPS permission, certain materials before they were repackaged, was not a "seizure." A "seizure" is a taking of property. *United States v. Lisk*, 522 F.2d 228, 230 (7th Cir. 1975). It involves "a forcible or secretive dispossession." *United States v. Haden*, 397 F.2d 460, 465 (7th Cir. 1968). The materials herein remained in UPS's possession and their delivery was unaffected since they were undeliverable. The materials were searched but not seized.

 Appellant argues that the FBI's request of UPS to retain the initial package was a seizure. At trial, the FBI agent testified that subsequent to the photocopying the UPS manager inquired as to what should be done with the package since "he had delivered it to both ends and hadn't been successful." He was then advised, "to hold onto it until we found out what procedure might be best." The agent went on to testify: "We requested that he hold it, but we didn't say he had to." The agency's request did not constitute a seizure. The colloquy between the agent and the UPS manager indicates that the FBI sought retention not as against someone's assertion of ownership rights, but as to possible disposal of the package as "undeliverable."

Regardless, the package was never introduced into evidence and its retention by UPS was of no evidentiary impact.

 Appellant also challenges the validity of the statute under which he was convicted, asserting that its language is so ungrammatical and unclear as to render any conviction thereunder constitutionally infirm. The statute at issue, 18 U.S.C. § 1461, states in pertinent part:

"Whoever knowingly uses the mails for the mailing, carriage in the mails, or delivery of *anything declared by this section . . . to be nonmailable*, or knowingly causes to be delivered by mail according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, or knowingly takes *any such thing* from the mails for the purpose of circulating or disposing thereof, or of aiding in the circulation or disposition thereof, shall be fined . . . or imprisoned . . . ." (emphasis supplied)

Nonmailable items, as defined in § 1461, include "[e]very obscene, lewd, lascivious, indecent, filthy or vile article, matter, thing, device, or substance." While not drawn artfully perhaps, the statute's intendments are sufficiently clear. It proscribes a use of the mails for delivery of nonmailable items, including obscene materials, as well as knowingly causing to be delivered by mail, or knowingly taking from the mails for circulation purposes "any such thing," meaning any nonmailable items such as obscene materials. The Supreme Court has previously determined that, ". . . the type of conduct covered by the statute [§ 1461] can be ascertained with sufficient ease to avoid due process pitfalls." *Smith v. United States*, supra, 431 U.S. 309, 97 S.Ct. 1768. The appellant's argument in this connection is without merit.

Finally, appellant challenges the trial court's rulings barring voir dire questions, and not requiring expert testimony, as to the prurient interests of certain deviant sexual groups. He contends that the mate-

rials were aimed at such groups and that a determination as to obscenity required an understanding of their interests, prurient and otherwise.

 Generally, voir diring potential jurors on their perspective of the standards they will be asked to apply is not favored. Such standards must be considered and applied as they relate to the specific facts of the case. "Appeal to prurient interest," like the concept of "reasonableness" in a negligence action, is not susceptible to simple abstraction. The court's refusal of appellant's voir dire requests was not an abuse of discretion. *Smith v. United States*, supra.

 As discussed earlier, when the allegedly obscene materials are introduced into evidence expert testimony is not required. *Paris Adult Theater I v. Slaton*, supra; *Hamling v. United States*, supra, 418 U.S. at 100, 94 S.Ct. 2887. This rests, in part at least, on the premise that hard-core pornography can and does speak for itself. *Paris Adult Theater I v. Slaton*, supra, 413 U.S. at 56, 93 S.Ct. 2628. Expert testimony might well be appropriate in "the extreme case . . . where contested materials are directed at such a bizarre deviant group that the experience of the trier of fact would be plainly inadequate to judge whether the material appeals to the prurient interest." *Paris Adult Theater I v. Slaton*, supra at 56, 93 S.Ct. at 2634. The materials at issue here are not so far removed from the realm of recognizable sexuality as to render normal jury evaluations inappropriate. The issue of prurient interest appeal was for the jury's resolution, and their determination will not be overturned here. *Smith v. United States*, supra.

The conviction is affirmed.