COMMONWEALTH vs. DANE ENTERTAINMENT
SERVICES, INC. (NO. 1).

Suffolk. April 6, 1983. — August 15, 1983.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Obscenity,* Community standard. *Constitutional Law,* Obscenity, Search
and seizure. *Due Process of Law,* Vagueness of statute. *Search and
Seizure,* Motion picture film, Affidavit, Probable cause. *Practice,
Criminal,* Severance, Motion in limine, Argument by counsel, Instruc-
tions to jury, Special questions to jury. *Evidence,* Relevancy and
materiality, Judicial discretion, Obscenity.

A defendant charged with possessing obscene films with intent to dis-
tribute them failed to demonstrate that the definition of obscene mat-
ter contained in G. L. c. 272, § 31, as in effect prior to St. 1982, c. 603,
§ 3, was unconstitutionally vague for lack of any contemporary State-
wide standards as to what is "patently offensive," and, accordingly,
the defendant's motion to dismiss the complaint against it was prop-
erly denied. [904-906] ABRAMS, J. concurring.
At the trial of a defendant charged with dissemination of an obscene film
there was no merit in the defendant's contention that the film should
be suppressed on the ground that the search warrant authorizing its
seizure had been obtained through the use of an affidavit containing a
description of the film prepared by police in violation of Federal copy-
right law. [906]
An affidavit prepared by police officers, who tape recorded a description
of a movie film while viewing it, provided a sufficiently detailed de-
scription of the film to allow a magistrate, who did not view the film,
to focus searchingly on whether the film was obscene, and fully sup-
ported his issuance of a search warrant on the basis of his finding of
probable cause to believe that it was obscene. [906-908]
There was no abuse of discretion in a judge's denial of a pretrial motion
to sever a criminal trial as to one allegedly obscene film from the trial
as to a second allegedly obscene film which was being shown in the
same movie theatre on the day the films were seized, where the two
complaints which had been joined for trial could be proved by evi-
dence connected with a single line of conduct and had arisen from
essentially one transaction, and where the defendant was not preju-
diced by the joint trial. [908-910]

Statement and discussion of the requirement that a defendant in an obscenity prosecution, who seeks to show that a particular work is not obscene by comparison to other materials, must first establish that the materials offered in evidence (1) are similar to his own, and (2) enjoy a reasonable degree of community acceptance. [912-914]

At the trial of complaints charging dissemination of obscene films, the judge acted within his discretion in excluding proffered testimony by an investigator, based on a survey of similar theatres and offered to show community acceptance of the films, in view of the relatively few theatres and patrons the witness described, in relation to the applicable Statewide standard. [914-915]

The judge at the trial of a complaint charging dissemination of obscene films did not abuse his discretion in granting the Commonwealth's motion in limine requesting the judge to prohibit defense counsel from making reference to censorship. [915]

The defendant at the trial of complaints charging dissemination of obscene films was not prejudiced by the judge's ruling denying defense counsel's request to refer to the First Amendment to the Federal Constitution and to art. 16 of the Massachusetts Declaration of Rights in his closing argument, where the defendant was prosecuted under an obscenity statute conforming to constitutional requirements and where the judge adequately instructed the jury on the statutory elements of obscenity and the Commonwealth's burden of proof. [915-916]

At a trial of complaints charging dissemination of obscene films the judge was not required to give two instructions exactly as requested by the defendant where his charge as a whole was adequate. [916]

A judge at an obscenity trial did not err in denying the defendant's request for instructions to the jury referring to the free speech provisions of the First Amendment to the Federal Constitution and art. 16 of the Massachusetts Declaration of Rights. [916]

A judge at a criminal trial did not abuse his discretion in denying the defendant's request that the case be submitted to the jury on special questions. [916]

COMPLAINT received and sworn to in the Chelsea Division of the District Court Department on February 26, 1981.

On appeal to the jury session of the Boston Municipal Court Department the case was tried before *Colicchio,* J.

After review was sought in the Appeals Court, the Supreme Judicial Court ordered direct appellate review on its own initiative.

*Lee Carl Bromberg* (*Freda Fishman* with him) for the defendant.

*Patrick J. Roache,* Assistant District Attorney, for the Commonwealth.

HENNESSEY, C.J.   The defendant was charged in two complaints with possessing obscene matter with intent to disseminate it, in violation of G. L. c. 272, § 29.[1]   Each complaint was based on a film, one called "On White Satin," the other, "Gangster Girl," shown at the defendant's movie theatre.   The complaints were tried together before a jury, which returned a verdict of guilty with respect to "On White Satin," and not guilty with respect to "Gangster Girl."   On appeal, the defendant argues that the judge erred in denying its motions to dismiss the complaint, to suppress the film, and for relief from prejudicial joinder. The defendant also objects to several of the judge's evidentiary rulings.   We transferred the case to this court on our own motion.   We affirm.

1.   The defendant argues that the complaint should have been dismissed because G. L. c. 272, § 31, is unconstitutionally vague.   We have repeatedly held that § 31 is constitutional, see *Commonwealth* v. *United Books, Inc., ante* 883, 891 (1983), but have left open "resolution of any challenge to the statute by proof that there is no such thing as . . . sexual conduct which is patently offensive with reference to contemporary Commonwealth norms, or . . . 'contemporary standards of the commonwealth'. . . . Of course, if such standards do not exist, the statute must fail for unconstitutional vagueness." *Commonwealth* v. *Trainor,* 374 Mass. 796, 800 (1978).

---

[1] At the time of the defendant's trial, G. L. c. 272, § 29, as appearing in St. 1974, c. 430, § 9, provided: "Whoever disseminates any matter which is obscene, knowing it to be obscene, or whoever has in his possession any matter which is obscene, knowing it to be obscene, with the intent to disseminate the same, shall be punished by . . . a fine of not less than one hundred dollars nor more than five thousand dollars . . . ."

The statute was rewritten by St. 1982, c. 603, § 3, to provide for "a fine of not less than one thousand nor more than ten thousand dollars for the first offense, not less than five thousand nor more than twenty thousand dollars for the second offense, or not less than ten thousand nor more than thirty thousand dollars for the third and subsequent offenses."

The defendant contends that there is "no such thing as . . . sexual conduct which is patently offensive with reference to contemporary Commonwealth norms," *Commonwealth* v. *Trainor, supra,* because of the widespread availability and acceptance of X-rated materials for an audience of consenting adults only. It relies in part on *Commonwealth* v. *Horton,* 365 Mass. 164, 176 (1974) (Hennessey, J., concurring), taking notice of "abundant empirical evidence that the community has tolerated increasingly permissive displays of pornographic literature and X-rated movies. . . . It is not surprising if . . . the defendants . . . concluded that the national standard superimposed on our local law had reached a state of almost unlimited permissiveness." *Horton* is inapposite because it considers the Massachusetts obscenity law as it existed prior to *Miller* v. *California,* 413 U.S. 15 (1973), which law used a national standard and failed to define adequately "hard-core pornography." *Commonwealth* v. *Horton supra* at 173-176. *Horton* makes no suggestion that the current obscenity statute (which does not require a "national standard superimposed on our local law," and which specifically defines "sexual conduct"), does not provide adequate warning to defendants.

The defendant asserts that "X-rated theatres throughout Massachusetts screen films daily for substantial audiences of consenting, paying adults," including the film "On White Satin." Even considering the proffered testimony of Donald Willcox, discussed *infra,* the fact that many citizens of the Commonwealth view a variety of X-rated materials does not persuade us "that there is no rational basis for the Legislature to conclude that there are ascertainable Statewide standards." *Commonwealth* v. *Trainor,* 374 Mass. 796, 800 (1978). Nor does the recent amendment of G. L. c. 272, § 31, by St. 1982, c. 603, § 7, from a Statewide to a countywide standard indicate that the prior standard was irrational or nonexistent. For the reasons discussed in *Commonwealth* v. *United Books, Inc., supra* at 892, we also reject the defendant's claim that the differing verdicts in the trial below show that there are no Statewide standards, and

that the Commonwealth must introduce extrinsic evidence of community standards. Accordingly, the defendant's motion to dismiss the complaint was properly denied.

2. The defendant next argues that the film "On White Satin" should have been suppressed because the search warrant authorizing its seizure was obtained in violation of Federal copyright law. The argument depends on the reasoning that the affidavit describing the film, which served as the basis for the warrant, was an unauthorized "derivative work." 17 U.S.C. § 101 (Supp. IV 1980). This contention is frivolous, and we reject it. Moreover, we question whether infringement of a copyright violates an expectation of privacy protected by the Fourth Amendment to the United States Constitution.

The defendant argues further that the affidavit describing "On White Satin" was insufficient to establish probable cause to believe that the film was obscene, and consequently the search warrant issued on the strength of the affidavit was invalid, and the film should have been suppressed. Because of the possibility of interference with protected materials, police seizure of allegedly obscene books and films "calls for a higher hurdle in the evaluation of reasonableness." *Roaden* v. *Kentucky*, 413 U.S. 496, 504 (1973). See *Stanford* v. *Texas*, 379 U.S. 476, 485 (1965); *Marcus* v. *Search Warrant of Property at 104 E. Tenth St.*, 367 U.S. 717, 730-733 (1961). Thus, before police obtain a warrant to seize a film, a magistrate must have an opportunity "to focus searchingly on the question of obscenity." *Marcus* v. *Search Warrant of Property at 104 E. Tenth St., supra* at 732. *Lee Art Theatre, Inc.* v. *Virginia*, 392 U.S. 636, 637 (1968) (per curiam). *United States* v. *Middleton*, 599 F.2d 1349, 1354-1355 (5th Cir. 1979). *Commonwealth* v. *Mascolo*, 6 Mass. App. Ct. 266, 270, cert. denied, 439 U.S. 899 (1978).

The affidavit describing "On White Satin" was prepared by two police officers, who dictated a description of the entire film into a tape recorder while they viewed the film from front row seats in the defendant's theatre. The affi-

davit describes each scene in the movie in exhaustive detail, and notes the approximate length of each scene. It reveals that almost the entire film consists of scenes of sexual conduct, as defined by G. L. c. 272, § 31, including graphic depictions of repeated acts of fellatio, cunnilingus, masturbation, and sexual intercourse. The affidavit provided a sufficiently detailed factual description of "On White Satin" to allow the magistrate to focus searchingly on whether the film was obscene, and fully supported the magistrate's finding of probable cause to believe that the film was obscene. Cf. *Marcus* v. *Search Warrant of Property at 104 E. Tenth St.*, *supra* at 731-732. Contrary to the defendant's assertion, further description of the film, addressing other elements of the three-part definition of obscenity, was not necessary. As the United States Court of Appeals for the Fifth Circuit observed in a similar case, "[a] showing of '[p]robable cause' requires much less evidence than a finding of guilt requires . . . for '[i]n dealing with probable cause . . . as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act'" (citations omitted). *United States* v. *Middleton*, 599 F.2d 1349, 1356 (5th Cir. 1979), quoting *Brinegar* v. *United States*, 338 U.S. 160, 175 (1949). See *Commonwealth* v. *Mascolo, supra.* Similarly, we reject the argument that because the police affidavit described "Gangster Girl" as depicting sexual acts similar to those in "On White Satin," and the jury found that "Gangster Girl" was not obscene, the affidavit describing "On White Satin" was insufficient to support a finding of probable cause.

We reject the defendant's contention that a magistrate must view a film in order to find probable cause to seize it. A properly detailed affidavit provides a sufficient factual basis to allow a magistrate to focus searchingly on the question whether there is probable cause to believe that a film is obscene. *United States* v. *Middleton*, 599 F.2d 1349, 1356 (5th Cir. 1979). *United States* v. *Christian*, 549 F.2d 1369,

1371 (10th Cir.), cert. denied, 432 U.S. 910 (1977). *United States* v. *Marks,* 520 F.2d 913, 917 (6th Cir. 1975), rev'd on other grounds, 430 U.S. 188 (1977). *United States* v. *Sherpix, Inc.,* 512 F.2d 1361, 1368-1369 (D.C. Cir. 1975). *Commonwealth* v. *Mascolo,* 6 Mass. App. Ct. 266, 269 (1978). *State* v. *Conaughty,* 561 P.2d 554, 555 (Okla. 1977).[2]

The magistrate issued a search warrant authorizing the seizure of "the motion picture film entitled 'On White Satin,' and any and all records relating to the production, manufacture, distributing, rental or purchase of the film entitled 'On White Satin' . . . ." The defendant argues that the police exceeded the scope of the warrant by seizing from the lobby wall a poster advertising "On White Satin." We do not decide whether the seizure of the poster violated "the constitutional requirement that warrants must particularly describe the 'things to be seized' [which] is to be accorded the most scrupulous exactitude when the 'things' are books [or movies], and the basis for their seizure is the ideas which they contain," *Stanford* v. *Texas,* 379 U.S. 476, 485 (1965), because any error in the admission of the poster was harmless beyond a reasonable doubt. *Chambers* v. *Maroney,* 399 U.S. 42, 52-53 (1970). *Commonwealth* v. *LaBriola,* 370 Mass. 366, 368 (1976).

3. The defendant argues that the judge erred in denying the defendant's pretrial motion to sever the trial as to "On White Satin" from the trial as to "Gangster Girl." "As a general proposition, the decision whether to allow a motion to sever two or more [complaints] which have been joined for purposes of trial rests in the sound discretion of the trial judge." *Commonwealth* v. *Jervis,* 368 Mass. 638, 645 (1975). Joinder of complaints for a single trial is permis-

---

[2] *Imperial Distribs., Inc.* v. *United States,* 473 F. Supp. 294, 297 (D. Mass. 1979), appeal dismissed, 617 F.2d 892 (1st Cir.), cert. denied, 449 U.S. 891 (1980), held that "the requirement that the [allegedly obscene] material be first submitted to a neutral magistrate may be satisfied by purchasing the offending book or magazine or viewing a film." The judge did not hold that a magistrate must view a film, and to the extent that other language in the opinion so indicates, the case is against the weight of the authority, and we decline to follow it.

sible when the complaints "charg[e] different crimes arising out of a single chain of circumstances" or when "several offenses might have been joined in one [complaint], and would be proved by substantially the same evidence, or evidence connected with a single line of conduct, and grow out of what is essentially one transaction, and where it does not appear that any real right of the defendant has been jeopardized." *Commonwealth* v. *Blow,* 362 Mass. 196, 200 (1972), quoting *Commonwealth* v. *Rosenthal,* 211 Mass. 50, 54 (1912). *Commonwealth* v. *Sylvester,* 388 Mass. 749, 755 (1983). Here, the two films were playing in the same movie theatre on the day they were seized. "[T]he separate acts with which the defendant [was] charged were closely related in time and space and were of the same general nature. . . . As such, the judge could properly have concluded that the separate offenses . . . grew essentially out of the same line of conduct" (citation omitted). *Commonwealth* v. *Cruz,* 373 Mass. 676, 690 (1977). *Hays* v. *State,* 145 Ga. App. 65, 66, cert. denied, 439 U.S. 947 (1978).

We reject the defendant's contention that it was prejudiced by the joint trial because "the explicitly sexual theme of ['On White Satin'] suffered by comparison to the more traditional and more familiar theme of 'Gangster Girl.'" The jury were not required to accept the testimony of the defendant's expert that "On White Satin" had literary or artistic value. *Commonwealth* v. *707 Main Corp.,* 371 Mass. 374, 385 (1976). Nor do we think it likely that either film suffered by comparison with the other. Furthermore, proof of the two offenses was compartmentalized, as the main proof of each offense was each film, and the judge twice instructed the jury that the "must decide each complaint separately . . . ." See *United States* v. *Avarello,* 592 F.2d 1339, 1346 n.10 (5th Cir.), cert. denied, 444 U.S. 844 (1979); *United States* v. *Knife,* 592 F.2d 472, 480 (8th Cir. 1979); *United States* v. *Luna,* 585 F.2d 1, 5 (1st Cir.), cert. denied, 439 U.S. 852 (1978). Jurors are expected to follow such instructions. *Commonwealth* v. *Leno,* 374 Mass. 716, 719 (1978). *Commonwealth* v. *Stone,* 366 Mass. 506, 513

(1974). Since the two complaints could be proved by "evidence connected with a single line of conduct, and grow out of what is essentially one transaction," *Commonwealth* v. *Blow, supra,* and the defendant was not prejudiced by the joint trial, there was no abuse of discretion in the denial of the motion to sever.

4. The defendant objects to the judge's ruling excluding the testimony, with accompanying exhibits, of Donald Willcox, concerning an investigation he conducted for the defendant in connection with the instant case. The Commonwealth stipulated to Willcox's extensive investigative experience. Defense counsel stated at voir dire that Willcox's testimony was offered to show community standards relating to the issues of prurient interest and patently offensive conduct. G. L. c. 272, § 31. The offer of proof was that Willcox "viewed a series of movies during the course of his investigation, after counting the patrons who had attended at various times, and he will testify as to the content of the film[s] to demonstrate that in terms of sexually explicit material, [they are] comparable to the two movies that we have before the Court in this case; and the purpose of the testimony, Your Honor, is to show that the movies were comparable sexually explicit materials which are available to the community and are viewed by significant numbers of persons in theaters throughout the Commonwealth, going to the question of helping to inform the Jury as to the community standard of what is acceptable, what does the community tolerate . . . ."

Willcox's proffered testimony, briefly summarized, was that between December 10, 1981, and June 5, 1982, he went to nine movie theatres located throughout eastern Massachusetts, that each of these theatres advertised "adults only" or "X-rated" films, that he viewed several films in their entirety on his visits, and that he observed patrons enter the theatre on each of his visits and counted their number in each case over a period of time. Each of the movies he viewed contained extensive periods of portrayal of explicit sexual conduct, including sexual intercourse,

fellatio, cunnilingus, oral sex, masturbation, and group sex. He observed (a) 112 patrons enter the Parkway Plaza Cinema (the defendant's theatre) in Chelsea between 11:50 A.M. and 1 P.M., on December 14, 1981; (b) fifty-one patrons enter the same theatre between 7 P.M. and 8 P.M., on December 19, 1981; (c) 118 patrons enter the same theatre between 7 P.M. and 9 P.M., on January 2, 1982; (d) forty-one patrons enter the Fine Arts Theater in Beverly between 1:35 P.M. and 2:05 P.M., on December 17, 1981; (e) 110 patrons enter the West End Pussycat Theater in Boston between 9:30 A.M. and 11 A.M., on December 12, 1981; (f) sixty-one patrons in attendance at the Center Cinema in New Bedford at noon on December 29, 1981; (g) forty patrons in attendance at Cinema I in Fall River at the 2:30 P.M. show on December 29, 1981; (h) fifty patrons in the Arts Cinema I and fifty patrons in the Arts Cinema II in Boston at the 2:30 P.M. shows on December 18, 1981; (i) thirty-four patrons in attendance at the North Station Cinema in Boston at 11 A.M., on December 16, 1981; (j) seventy-six patrons entering the Fine Arts Theater in Worcester just prior to 12:30 P.M., on December 18, 1981; and (k) seventy-eight automobiles enter the Route 133 Drive-In Theatre in Georgetown just prior to the 8 P.M. show on June 5, 1982.

In addition, Willcox testified on voir dire that he visited two stores in Massachusetts which openly displayed "X-rated" and "adult" video-cassettes for sale or rental, that he observed approximately twenty patrons in each store, that he obtained from each store a catalog listing a large number of available "adult" cassettes, and that one catalog listed "On White Satin." Willcox also testified that he purchased magazines in the Commonwealth and responded to advertisements contained therein for mail order video cassettes of "X-rated" and "adult" films, and that as a result of his inquiries, he received numerous price lists and catalogs offering such films on video cassettes by mail order, including, in one catalog, "On White Satin." Finally, Willcox testified to the availability of "X-rated" films and "adult" program-

ming over the "Escapade" cable television channel and displayed advertisements for them in the cable television guides for December, 1981, January, 1982, and February, 1982.

"The defendant in an obscenity prosecution, just as a defendant in any other prosecution, is entitled to an opportunity to adduce relevant, competent evidence bearing on the issues to be tried." *Hamling* v. *United States*, 418 U.S. 87, 125 (1974). The question whether a film is patently offensive, or appeals to the prurient interest based on community standards, is clearly relevant in an obscenity case. G. L. c. 272, § 31. Evidence on these issues may be given in the form of expert opinion testimony, and we have remarked on the importance of such expert testimony to a defense that material is not obscene. See *Commonwealth* v. *United Books, Inc., supra* at 895-896. Willcox, however, was not offered to give an expert opinion on the patent offensiveness of "On White Satin."[3] Rather, his proffered testimony was of a type commonly described as comparison evidence, which seeks to establish that the community accepts material depicting sexual conduct similar to that depicted in a film. Such comparison evidence is relevant to show whether a film appeals to the prurient interest or is patently offensive. "The community cannot . . . condemn that which it generally tolerates." *Smith* v. *California*, 361 U.S. 147, 171 (1959) (Harlan, J., concurring). *Commonwealth* v. *Trainor*, 374 Mass. 796, 801-806 (1978) (discussing use of public opinion survey by defense to show relevant standards in Commonwealth).

We do not detract from our recognition of the importance of defense evidence about obscenity by holding that, when the defendant seeks to show that a work is not obscene by reference to other materials, the defendant must first establish "that the proffered evidence (1) is similar to his own, and (2) enjoys a reasonable degree of community acceptance." *United States* v. *Womack*, 509 F.2d 368, 377 (D.C.

---

[3] Indeed, there was no showing that he had seen "On White Satin."

Cir. 1974), cert. denied, 422 U.S. 1022 (1975). *United States* v. *Pinkus,* 579 F.2d 1174, 1175 (9th Cir.), cert. dismissed, 439 U.S. 999 (1978). *United States* v. *Manarite,* 448 F.2d 583, 593 (2d Cir.), cert. denied, 404 U.S. 947 (1971). *United States* v. *West Coast News Co.,* 357 F.2d 855, 860 (6th Cir. 1966), rev'd on other grounds sub nom. *Aday* v. *United States,* 388 U.S. 447 (1967). *Pierce* v. *State,* 292 Ala. 473, 482-483 (1974), cert. denied, 419 U.S. 1130 (1975). *State* v. *Carlson,* 291 Minn. 368, 373 (1971). Establishing this two-part foundation is simply a logical prerequisite to the relevancy of the proffered comparison evidence. "Since the issue at hand is the nature of contemporary community standards with respect to 'works like his own,' in order for there to be a rational basis for its admission there must be a showing that [it] is similar . . . ." *United States* v. *Womack, supra.* Similarly, "[e]vidence of mere availability of similar materials is not by itself sufficiently probative of community standards to be admissible in the absence of proof that the material enjoys a reasonable degree of community acceptance." *United States* v. *Manarite, supra.* *Hamling* v. *United States,* 418 U.S. 87, 125, 127 (1974). *People* v. *Finkelstein,* 11 N.Y.2d 300, 305 (1962). Cf. *Commonwealth* v. *Trainor,* 374 Mass. 796, 805-806 (1978) (public opinion survey was irrelevant when it established only that those polled were willing to allow, or indifferent to, the sale of sexually explicit material).

The trial judge must determine whether the defendant has established the two-part foundation, preferably by means of a voir dire, as was done here. Moreover, "the trial judge must be allowed 'wide discretion as to whether to permit the introduction of such allegedly comparable publications' since 'the admission of a number of different publications alleged to be comparable to the publication at issue might make the trial unmanageably complex and lengthy.'" *United States* v. *Womack, supra* at 378, quoting *Books, Inc.* v. *United States,* 358 F.2d 935, 939 (1st Cir. 1966), rev'd on other grounds, 388 U.S. 449 (1967). *Hamling* v. *United States, supra* at 127. *United States* v. *Pinkus, supra.* *Pierce*

v. *State, supra* at 482. This reflects the general rule that balancing the probative value of evidence against its prejudicial impact is a task committed to the discretion of the trial judge. *Commonwealth* v. *Jackson,* 388 Mass. 98, 103 (1983), and cases cited. *Commonwealth* v. *Cohan,* 307 Mass. 179, 183 (1940). *Commonwealth* v. *Mascolo,* 6 Mass. App. Ct. 266, 278 (1978).

Provided that the judge believed Willcox's description of the films (and there was no finding to the contrary, see *Commonwealth* v. *United Books, Inc., supra* at 897), there was a substantial showing that the films Willcox viewed-were comparable to "Gangster Girl" and "On White Satin." See *United States* v. *Pinkus,* 551 F.2d 1155, 1161 (9th Cir. 1977), rev'd on other grounds, 436 U.S. 293 (1978) (films were comparable because they presented the same or similar sexual acts with an equal degree of explicitness). Indeed, in the interests of judicial economy, a judge should quite readily accept a witness's credible description of films. Such descriptive evidence is a useful substitute for admission of the films themselves, which might tend to delay the trial and confuse the jury. In this case the judge might well have ruled that the films were comparable, and, if the decision had been ours in the first instance, we might well have admitted the evidence. However, in terms of community acceptance, the judge acted within his discretion in excluding Willcox's testimony,[4] considering the small numbers of theatres and patrons Willcox described, in the context of the Statewide standard to be applied.[5]

Willcox proffered no evidence about community acceptance of the video cassettes or the cable television programs. Accordingly, while we hold that comparison evidence is

---

[4] Compare the standard of review we apply to the "investigator" Willcox's testimony with the closer scrutiny we apply to the exclusion of the proffered testimony of the expert Professor Blinderman, in *United Books, Inc., supra,* and *Commonwealth* v. *Dane Entertainment Servs., Inc. (No. 2), post* 917 (1983).

[5] The legislative amendment, St. 1982, c. 603, § 3, which introduced a countywide standard, was not in effect at the time of trial.

admissible in the trial judge's discretion if the proper foun-
dation is laid, we conclude that the judge did not err in ex-
cluding Willcox's testimony.

5. The Commonwealth made a motion in limine request-
ing the judge to prohibit defense counsel from making
"direct or indirect" reference to censorship. "The purpose
of a motion in limine is to prevent irrelevant, inadmissible
or prejudicial matters from being admitted in evidence . . .
and in granting such a motion, a judge has discretion similar
to that which he has when deciding whether to admit or ex-
clude evidence . . ." (citations omitted). *Commonwealth* v.
*Lopez,* 383 Mass. 497, 500 n.2 (1981).[6] "Censorship" is an
inflammatory term, and the concept is irrelevant to the
prosecution of an obscenity case. Accordingly, the judge
did not abuse his discretion in granting the Common-
wealth's motion.

We are more troubled by the judge's ruling denying de-
fense counsel's request "to make reference to the First
Amendment and to Article XVI of the Declaration of Rights
. . . in my closing argument, there again to talk about the
question of freedom of speech, movies being a protected
form of expression and that the obscenity statute draw[s] the
line which defines the limit of the protection." It is estab-
lished that obscene material is not protected by the First
Amendment. *Roth* v. *United States,* 354 U.S. 476, 485
(1957). The impact of the First Amendment in the obscen-
ity area is, accordingly, in requiring proper legal standards
and procedures to ensure that the State does not unconstitu-
tionally regulate nonobscene speech. If a defendant is pros-
ecuted under a constitutional obscenity statute, and the jury
are properly charged on the statutory elements of obscenity
and the Commonwealth's burden of proof, the relevant
First Amendment issues are technically addressed. We
have today reaffirmed that G. L. c. 272, § 31, is constitu-

---

[6] See *Commonwealth* v. *Hood, ante* 581, 595 n.5 (1983), for our firm
suggestion that restraint be used in allowing motions in limine aimed
toward exclusion of defense evidence in criminal trials. See also *id.* at
596-598 (Liacos, J., concurring).

tional, and, as discussed *infra,* the jury instructions were adequate. Thus, while we might have ruled differently if the decision had been ours in the first instance, the defendant was not prejudiced by defense counsel's inability to refer to the First Amendment and freedom of speech in his closing argument.

Finally, the defendant objects to the judge's denial of the defendant's requested jury instructions, and his refusal to submit the case to the jury on special questions. The requested instructions dealt with (1) the meaning of proof beyond a reasonable doubt, (2) the free speech provisions of the First Amendment and art. 16, and (3) the statutory definition of obscenity. As to the first and third of these instructions, the defendant's argument is properly rejected on the reasoning that the defendant is "not entitled to any particular instruction as long as the charge, as a whole, was adequate." *Commonwealth* v. *Sherry,* 386 Mass. 682, 696 (1982), and cases cited. The judge charged the jury fully and properly on the meaning of proof beyond a reasonable doubt, the presumption of innocence and the Commonwealth's burden of proof, and the three statutory elements of obscenity. As to the second instruction, a judge is not required to instruct the jury on the First Amendment in an obscenity case. "An adequate charge on the elements of obscenity and the presumption of innocence is sufficient in this regard." *Commonwealth* v. *United Books, Inc., supra* at 901.

Nor did the judge err in denying the defendant's request for special questions. "Submission of special questions . . . is rarely resorted to in criminal trials, and in any case is discretionary with the judge" (citations omitted). *Commonwealth* v. *Lussier,* 333 Mass. 83, 94 (1955). See generally *Commonwealth* v. *Licciardi,* 387 Mass. 670, 675-677 (1982).

*Judgment affirmed.*

ABRAMS, J. (concurring). I adhere to the views expressed in my dissent in *Commonwealth* v. *Trainor,* 374 Mass. 796, 807-811 (1978). Accepting the fact that my views did not prevail, I concur in this opinion.